## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01136-SCT

*BARBARA ANN BREKEEN*

*v.*

*WILLIAM LEE BREKEEN*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/2002 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DUNCAN L. LOTT |
| ATTORNEY FOR APPELLEE: | JOE M. DAVIS |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND REMANDED - 06/24/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT**:

¶1.     On May 8, 2002, the Tishomingo Chancery Court awarded William Lee Brekeen a divorce from Barbara Ann Brekeen on the grounds of adultery. The chancery court further awarded custody of the parties' minor child to William and granted Barbara liberal visitation rights. Feeling aggrieved by the chancellor's ruling regarding the custody of her minor child, Barbara has timely filed her appeal before this Court. Finding that the chancellor placed too much weight on one particular *Albright* factor, we reverse the judgment of the Tishomingo County Chancery Court and remand this case for further proceedings.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. William and Barbara Brekeen were married on July 20, 1991. On October 19, 1994, their minor child was born. Barbara left their home at the Tishomingo County State Park, where her husband was employed as park manager, on June 26, 2001, and moved into the parties' city home in Tishomingo. Barbara's son from a previous marriage later moved into the city to live with his mother.

¶3. William filed for divorce on the grounds of Barbara's alleged affair with another man. Barbara also filed for divorce on the grounds of habitual, cruel and inhuman treatment. After the separate causes were consolidated, the chancellor awarded temporary custody of the parties' minor child to William and granted temporary visitation to Barbara until final disposition. After a trial on the merits was conducted, the chancellor awarded William a divorce from Barbara on the grounds of adultery and awarded William primary legal custody of the parties' minor child. Barbara was awarded extensive visitation rights. The following is the judgment of chancellor:

> At this time, the Court will now consider each of the [*Albright*] guidelines separately, which are as follows:
> 1. Age, Health and Sex of Child.
> The minor female child of the parties is eight years of age and in good health.
> 2. Continuity of Care Prior to the Separation.
> Both parents were actively involved in the care of the minor child before the separation on June 26, 2001, but Barbara Ann Brekeen did not work when the child was younger and did participate more in the care of the child, primarily because William Lee Brekeen was working on a full time basis.
> 3. Parenting Skills and the Willingness and Capacity to Provide the Primary Child Care to the Child.
> Both parties have good parenting skills, are actively involved in the minor child's school and church activities and have demonstrated by the proof they respectively presented that each has the capacity to provide for the care of the minor child.
> 4. Employment of the Parents and Responsibilities of that Employment.
> William Lee Brekeen is employed by the Mississippi Department of Wildlife, Fisheries and Parks and serves as park manager of Tishomingo State Park, where he has overall management of the operation of that park.  At the temporary hearing, Barbara Ann

Brekeen worked for the Town of Tishomingo, but has since been terminated from this employment, and now works at Town and Country Furniture Store in Iuka, Mississippi.

5. Physical and Mental Health and Age of Parents

Both William Lee Brekeen and Barbara Ann Brekeen are 41 years of age and are in good physical and mental health.

6. Emotional Ties Between the Parents and Child

Both parties have strong emotional ties with the minor child, and she with them.

7. Moral Fitness of Parents

The proof clearly established that William Lee Brekeen is a morally fit individual. While he did not attend church on a regular basis with his family before the date of separation on June 26, 2001, since he obtained the temporary custody of the minor child by prior order of the Court dated September, 2001, he and the minor child attend church regularly. The proof did establish that William Lee Brekeen had a child, apparently out of wedlock, many years ago, and agree to have his parental rights in that child terminated.

Barbara Ann Brekeen has used very poor judgment in her personal life in that she has clearly engaged in an extra-marital affair with an individual she met while working with the Town of Tishomingo. This individual also worked for the Town of Tishomingo as a policeman. Because her relationship with this police officer and because of unauthorized long distance calls at the City Hall in Tishomingo, Mississippi, Barbara Ann Brekeen was terminated from her employment between the temporary hearing held in this matter in September, 2001, and the date of the first day of the hearing on the merits held on February 15, 2002.

This relationship by Barbara Ann Brekeen with the policeman caused her to leave the marital home at the state park, leaving William Lee Brekeen, her oldest son, ["John"], and the 8 year old daughter of the parties, without notice to the family members. She was gone for over a week without contacting William Lee Brekeen, the minor child or ["John"]. Later she came back and took ["John"] with her to the home in Tishomingo, Mississippi where she has remained since that time.

Both parties acknowledged that William Lee Brekeen tried to persuade Barbara Ann Brekeen to seek marriage counseling after the separation, but she refused to do so. Barbara Ann Brekeen admitted she told William Lee Brekeen "her feelings had changed" and that she left her three family members "because I wanted to think about what I was going to do."

This bizarre action on the part of Barbara Ann Brekeen in leaving her family without notice, particularly her eight year old minor daughter, her adulterous affair at the expense of her family, and her termination from her employment at the Town of Tishomingo, all this Court to have grave and serious concerns about her moral fitness for custody of the minor child.

8. The Home, School and Community Records of the Child.

The proof established that the minor child of the parties is a good student, making straight A's, at Tishomingo Elementary School.

9. Preference of the Child.

Because of the young age of the minor child, age eight, this factor is not applicable.

10. Stability of the Home Environment of Each Parent.

William Lee Brekeen has a stable home in the manager's home provided to him at Tishomingo State Park. Since the date of separation on June 26, 2001, Barbara Ann Brekeen and her oldest son, ["John"], reside in a home the parties jointly own at [...].

11. Other Factors Relevant to the Parent-Child Relationship.

As stated above, the actions of Barbara Ann Brekeen in her personal life cause this Court to have doubt as to her stability to serve as the primary custodian of her minor daughter. Who is to say that she might not repeat this dismal conduct in the future.

On the other hand, despite this strange conduct by Barbara Ann Brekeen, there is no doubt that she loves her daughter, has played a tremendous part in her growth, development and activities in her younger years, and clearly desire to continue doing so in the future.

Further, the Court is very mindful of the physical needs in adjustment with the minor daughter will face in a few short years which can best be assisted by her mother.

*********

Based upon all the forgoing, the Court reaches the inescapable conclusion that the best interest of the minor child would be for William lee Brekeen to have the primary legal custody of the minor child, and that become the order of the Court.

## DISCUSSION

¶4. As this Court has stated on numerous occasions, absent an abuse of discretion, we will uphold the decision of the chancellor. "This Court will not disturb the factual findings of the chancellor unless said factual findings are manifestly wrong or clearly erroneous." *Jerome v. Stroud*, 689 So.2d 755, 757 (Miss. 1997) (citing *McAdory v. McAdory*, 608 So.2d 695, 699 (Miss. 1992)). "However, where the chancellor improperly considers and applies the *Albright* factors, an appellate court is obliged to find the chancellor in error." *Hollon v. Hollon*, 784 So.2d 943, 946 (Miss. 2001) (citing *Stroud*, 689 So.2d at 757 (citing *Smith v. Smith*, 614 So.2d 394, 397 (Miss. 1993))).

¶5. This Court has continuously held that in all child custody cases the polestar consideration shall remain the best interest and welfare of the child. *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss.

1983). The *Albright* factors, used to determine child custody based on the best interests of the child, include:

> 1) age, health and sex of the child; 2) determination of the parent that had the continuity of care prior to the separation; 3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; 4) the employment of the parent and responsibilities of that employment; 5) physical and mental health and age of the parents; 6) emotional ties of parent and child; 7) moral fitness of parents; 8) the home, school and community record of the child; 9) the preference of the child at the age sufficient to express a preference by law; 10) stability of home environment and employment of each parent; and 11) other factors relevant to the parent-child relationship.

*Hollon*, 784 So.2d at 947 (citing *Albright*, 437 So.2d at 1005).

¶6.      In *Carr v. Carr*, 480 So.2d 1120 (Miss. 1985), this Court held that "the fact of adultery alone does not disqualify a parent from custodianship but that the polestar consideration in original custody determinations is the best interest and welfare of the minor child." Applying the *Albright* factors, this Court noted that

> moral fitness of a parent encompasses the charge of adultery. But moral fitness is but one factor to be considered, and it is a factor worthy of weight in determining the best interest of the child. Adultery of a parent may be an unwholesome influence and an impairment to the child's best interest, but on the other hand, may have no effect. The trial court should consider this factor along with all others when making original custody determinations.

> And as stated in *Albright*, marital fault should not be used as a sanction in custody awards.

*Carr*, 480 So. 2d at 1123. After a complete review of the record, the Court found that the chancellor weighed all relevant factors applicable to the circumstances. *Id.* Therefore, this Court concluded that the chancellor's findings were supported by the record because he considered adultery as only one factor when

considering what was in the best interest and welfare of the children. *Id.* However, in the case sub judice, the record does not support the findings of the chancellor.

¶7.    In addressing the *Albright* factors, the chancellor listed each factor and gave a short one to two sentence statement under each factor except for the factors pertaining to moral fitness and other relevant factors. These explanations comprised three and one half pages of the five pages of the opinion devoted to the discussion on custody.

### 1. Age, Health and Sex of the Child.

¶8.    The chancellor incorrectly stated that the child was eight years old. The minor child turned seven on October 19, 2001, while the custody hearings were taking place and was attending first grade at the time of the hearings. The chancellor made no finding as to either parent on this factor. In *Mercier v. Mercier*, 717 So.2d 304, 307 (Miss. 1998), this Court acknowledged that "the tender years doctrine has been gradually weakened in Mississippi jurisprudence to the point of now being only a presumption. *Law v. Page*, 618 So.2d 96, 101 (Miss. 1993). Today, the age of a child is simply one of the factors that we consider in determining the best interests of the child. *Albright v. Albright*, 437 So.2d 1003, 1005 (Miss. 1983)."

### 2. Continuity of Care Prior to the Separation

¶9.    The chancellor found that although both parties participated in the care of the child, Barbara did not work when the child was younger, and therefore was able to participate more in the care of the child. The chancellor also noted that William worked on a full-time basis. Although, no specific finding was made

in favor of either parent by the chancellor, the parties both agree that from the language of the judgment, the chancellor found this factor in favor of Barbara.

### 3. Parenting Skills and the Willingness and Capacity to Provide the Primary Child Care to the Child.

¶10. The chancellor found that each parent exhibited good parenting skills and each were active in the child's school and church activities. The record reflected that the minor child had attended church with Barbara her entire life. William did not attend church with his family because of his job. After the separation, William began accompanying the minor child to church. Testimony also showed that William had not taken the minor child to the dentist since the separation because he did not feel it was necessary. Barbara testified that she always saw to it that her children regularly saw the dentist and a doctor. There was also testimony that William allowed his six-year-old daughter to attend first grade wearing two-inch high heels although she complained that they hurt her feet. Barbara testified that although the minor child was old enough to dress herself, she still found it necessary to lay her clothes out for school each morning. Once again the chancellor did not make a specific finding in favor of one parent over the other regarding this factor.

### 4. Employment of the Parents and Responsibilities of that Employment.

¶11. The chancellor noted that William worked as the park manager of the Tishomingo State Park, and Barbara worked at Town and Country furniture store in Iuka. However, testimony showed that William's time sheets indicated he worked 50 to 60 hour weeks. William disputed these numbers saying that it was standard practice to add comp time to his hours each week. He also testified that he was able to do some of his work at home. Although William usually had Thursday and Friday off, he also had to work on the

7

weekends, and as park manager, he lived at the park and could be called out at a moment's notice. Barbara's work hours were 8:00 a.m. to 5:00 p.m. Monday through Friday. The chancellor did not make a specific finding as to either parent regarding this factor.

*5. Physical and Mental Health and Age of the Parents.*

¶12.    The chancellor determined that both parents were of good mental and physical health; therefore, he did not make a specific finding as to either parent regarding this factor.

*6. Emotional Ties Between the Parents and Child.*

¶13.    Finding that both parents had strong emotional ties to the minor child, the chancellor did not make a specific finding as to either parent regarding this factor.

*7. Moral Fitness of the Parents.*

¶14.    The chancellor found William to be a morally fit individually. However, over the next two pages of his order, the chancellor discussed Barbara's extra-marital affair which led to the couple's divorce. Barbara testified that this affair occurred after she moved out of the home she shared with her husband; however, the chancellor concluded that it was the affair that led Barbara to leave her home and her child. The chancellor stated Barbara used "very poor judgment" in her personal life. The chancellor considered her actions to be "bizarre" enough for him to have "grave and serious concerns about her moral fitness for custody of the minor child."

*8. The Home, School and Community Records of the Child.*

¶15.    The chancellor found that the minor child exhibited exemplary grades at Tishomingo Elementary School. The chancellor did not make a specific finding as to whether this factor favored either of the parents.

*9. The Preference of the Child.*

¶16.    The chancellor was correct in finding that because of the age of the child, this factor was not applicable.

*10. Stability of Home Environment of Each Parent.*

¶17.    The chancellor found that William's employment as manager of the Tishomingo State Park provided him with a stable home. The chancellor also noted that Barbara and her son had been residing in the home owned jointly by the parties in Tishomingo since the separation. However, the chancellor ordered that the home be sold, with the net proceeds divided equally among the parties. The chancellor did not make a specific finding as to whether this factor favored either party.

*11. Other Factors Relevant to the Parent-Child Relationship.*

¶18.    Although this factor affords chancellors the opportunity to discuss other factors not already covered in the other *Albright* factors, this chancellor chose to solely rely on Barbara's affair. After determining that Barbara exhibited good parenting skills and possessed the capacity to properly provide and care for her minor child, as previously discussed in the third factor, the chancellor nevertheless stated that he believed that certain aspects of Barbara's personal life would hinder her ability to serve as a her minor child's primary care giver.  The chancellor's findings as to Barbara on these two factors are woefully inconsistent in that the chancellor on the one hand found that Barbara exhibited "good parenting skills" and had "the capacity to provide for the care of the minor child," but on the other hand found that he doubted "her ability to serve as the primary custodian of her minor daughter" because of her "bizarre action."  The chancellor failed to mention the support Barbara received from her family, William's interference with Barbara's time with their minor child, or any other relevant factor not contained in the other factors. He again reiterated the actions

9

of Barbara's extra-marital affair and the doubt this cast on her ability to serve as the primary custodian of her minor daughter. The chancellor noted his concern of her repeating this action in the future. Therefore, the chancellor concluded, based on the above findings, that it would be in the best interest of the minor child for William to have primary legal custody of the minor child. The chancellor then awarded extensive visitation rights to Barbara by granting her three weekends a month beginning on Thursday afternoon and ending on Sunday evening.

¶19. After a thorough review of the record, we find without doubt that the chancellor relied heavily on the fact the Barbara had an affair, thus placing too much weight on one *Albright* factor. From his consideration of the *Albright* factors, the chancellor found two in favor of William (moral fitness and other relevant factors) and one in favor of Barbara (continuity of care prior to the separation). The remaining factors were found to be neutral.

> This Court has held that although it could not be said that the chancellor's conclusion regarding the application of the *Albright* factors was so lacking in evidentiary support as to be manifest error, the absence of specific findings prevented affirming the lower court with the confidence that the best result was reached. *Hayes v. Rounds*, 658 So.2d 863, 865 (Miss.1995). A similar situation presents itself today. While the chancellor analyzed the applicable factors, he did not do so with specificity, assigning very few to a particular parent. If, as *Albright* indicates, one factor should not outweigh another, the chancellor erred by determining the case on the basis of Beth's moral fitness, when upon review, Beth clearly wound up with more factors weighing in her favor. *Albright*, 437 So.2d at 1005.

*Hollon*, 784 So.2d at 951-52.

¶20. We must remember what this Court stated in *Albright* – "[m]arital fault should not be used as a sanction in custody awards." 437 So.2d at 1005. In today's case, the chancellor granted William a divorce from Barbara on the ground of adultery. The chancellor in this case indeed "sanctioned" Barbara by denial

10

of custody of her daughter because of her marital fault – adultery. Of the various *Albright* factors considered by the chancellor, a reading of the record, including the chancellor's detailed 13-page opinion and judgment, can leave no doubt that Barbara's adultery, whether it be categorized as "moral fitness" or the catch-all "other factors" under *Albright*, caused Barbara to be denied custody of her minor daughter.

## CONCLUSION

¶21. This Court finds that the chancellor abused his discretion by placing too much weight upon the moral fitness factor and disregarding evidence presented under the remaining factors. Therefore, the decision of the Tishomingo County Chancery Court is reversed, and this case is remanded for further proceedings consistent with this opinion.

¶22. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., AND DICKINSON, J., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**RANDOLPH, JUSTICE, DISSENTING:**

¶23. The majority reverses the chancellor's decision because it concludes that the chancellor placed too much emphasis on Mrs. Brekeen's adulterous conduct and was silent on the other *Albright* factors. On remand, the majority orders that a more thorough application of *Albright* be conducted and without such an emphasis on Mrs. Brekeen's adulterous conduct. Implicit in the holding, is a determination that the chancellor abused his discretion. Finding that no abuse of discretion occurred, I respectfully dissent. This Court is "bound by those findings unless it can be said with reasonable certainty that those findings were

11

manifestly wrong and against the overwhelming weight of the evidence." *Carr v. Carr*, 480 So.2d 1120, 1123-24 (Miss. 1985) (citations omitted).

¶24. In its order, the trial court granted Mr. Brekeen primary custody coupled with "liberal visitation" rights in favor of Mrs. Brekeen. The trial court specifically enumerated several visitation periods, including granting Mrs. Brekeen the right to visitation for three extended weekends a month (i.e. Thursday thru Sunday). The trial court's decision was well supported by the evidence presented by the parties.

¶25. Without abandoning my view that the decision should be affirmed, I note that on remand the trial court should consider many facts which favor Mr. Brekeen receiving primary custody.

¶26. As to the *Albright* factor of "*continuity of care*," such consideration should not be limited to the time prior to separation. Instead, chancellors should consider "continuity of care" until the final determination of custody. In the instant case, the child has remained with Mr. Brekeen since Mrs. Brekeen moved out on June 26, 2001, when the child was six.[1] During the school year in which she resided with her father, the child received straight "A's". She joined Girl Scouts and was participating in little league sports. The child was able to flourish in the time since her mother moved out and her father received temporary custody.

¶27. I question how it could be in the best interest of the almost ten-year old child to presently remove her from the custody of father. If this is indeed the overwhelming consideration, on remand the trial court should apply the *Albright* factors in light of the facts present at that time.

---

[1]The child was born on October 7, 1994.