# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02090-SCT

*KELLY B. COPELAND*

*v.*

*GREGORY COPELAND*


DATE OF JUDGMENT: 09/04/2003
TRIAL JUDGE: HON. CARTER O. BISE
COURT FROM WHICH APPEALED: HARRISON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT: DAMON SCOTT GIBSON
ATTORNEY FOR APPELLEE: ALBERT LIONEL NECAISE
NATURE OF THE CASE: CIVIL - CUSTODY
DISPOSITION: AFFIRMED - 12/16/2004
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**BEFORE SMITH, C.J., EASLEY AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Gregory Copeland ("Greg") filed for divorce on May 17, 2002, against his wife, Kelly

B. Copeland ("Kelly"), in the Chancery Court of the First Judicial District of Harrison County,

Mississippi.    Greg's complaint for divorce[1] asserted that he was entitled to a divorce from

Kelly on the grounds of habitual cruel and inhuman treatment, adultery or alternatively,

irreconcilable differences.    Additionally, Greg's complaint sought custody of the minor child

of the parties, Gregory Mason Copeland ("Mason").

---

[1] Greg's complaint for divorce named Michael Blackwell as the co-respondent in the adultery.

¶2. On May 22, 2002, Kelly filed an answer and counterclaim, denying that Greg was entitled to a divorce, and specifically denying the adultery. Kelly sought a divorce on the grounds of habitual cruel and inhuman treatment or, alternatively, irreconcilable differences. Kelly demanded child support, equitable division of the marital assets, attorney's fees and immediate temporary custody of Mason.

¶3. The matter was heard on May 31, 2002, on the issues of temporary relief, and although the trial court issued a temporary order, none could be located in the trial court file, nor was any noted on the docket sheet.

¶4. On February 6, 2003, prior to the matter going to trial, Kelly filed a motion for recusal in an attempt to persuade the chancellor, Honorable Carter O. Bise, to recuse from the case.[2] This motion was based on Judge Bise's prior statement of "recusal," where Judge Bise allegedly stated in an off record conference that he would recuse himself.

¶5. On March 12, 2003, the recusal motion was heard by Judge Bise. The motion for recusal was based on Kelly's concern about alleged political support provided to Judge Bise by Greg's counsel, Albert L. Necaise.[3] This motion was denied on September 4, 2003.

¶6. This matter came on for hearing on June 19, 2003, and the trial lasted through June 27, 2003, at which time the trial court took the matter under advisement. On September 4, 2003, the trial court entered its judgment granting: (1) Greg a divorce on the ground of adultery; (2)

---

[2] The case was set on Judge Teel's docket, but after he failed to be re-elected, was reset by the Court Administrator on Judge Bise's docket.

[3] Necaise introduced Judge Bise at the Dedeaux rally during Bise's election campaign.

Greg and Kelly joint legal custody of Mason; (3) paramount physical custody of Mason to Greg; and (4) visitation to Kelly.

¶7.    Kelly appeals and raises the following issues, which have been reworded for clarification:

> I.    Whether the chancellor should have recused himself on the motion of Kelly Copeland.
>
> II.    Whether the chancellor erred when he allowed the tape recordings, Exhibit 1, to be introduced as evidence.
>
> III.    Whether the chancellor, in granting Gregory Copeland paramount physical custody of Mason Copeland, the parties eighteen month old child, was manifest error.

## FACTS

¶8.    Greg and Kelly were married on November 4, 2000, in the First Judicial District of Harrison County, Mississippi, where they lived until their separation, which occurred on or around May 17, 2002. On December 17, 2001, during the marriage, Mason was born.[4] Kelly also had a daughter, Allie Holliman, from a previous relationship prior to Greg and Kelly's marriage. Allie was born on June 11, 1998, and her father is Daniel Holliman.[5] Greg, Kelly, Mason and Allie resided in Saucier, Mississippi, in a trailer on land contiguous with that of Greg's parents.

¶9.    At all pertinent times, Kelly worked at the office of Kimble Doty, a dentist, as a dental assistant earning approximately $28,000 yearly. Greg operates his own business, Greg Copeland Trucking Company, as a heavy equipment operator, clearing construction sites. Greg

---

[4] Mason was eighteen months at the time of trial.

[5] Allie was five years old at the time of trial.

has been self-employed since the age of 16 doing "dirt work." Greg's hours are flexible and he testified that he was off work by 3 or 4 p.m.

¶10. Kelly stayed home with Mason for five weeks after his birth before returning to work. After Kelly returned to work, and until the date of separation, Greg's mother, Barbara Copeland, would keep Mason during the day.

¶11. Problems developed for Greg and Kelly shortly after Kelly became pregnant with Mason. Greg began sleeping in the living room while Kelly continued to sleep in the bedroom. According to Greg, the reason he slept in the living room was because Kelly complained about his snoring and moving too much; according to Kelly, it was because there was no affection in the marriage, Greg showed no affection to Kelly or Allie, and that Greg abused Kelly physically after she became pregnant with Mason.

¶12. The sleeping arrangements continued after Mason's birth. After his birth, Mason slept in his crib in the living room where Greg was sleeping. Both parties testified that they took care of Mason's needs after he was born. Kelly testified that Greg participated in caring for Mason, and they both got up with him at night.

¶13. Greg testified that Kelly began coming home late from work in March 2002. Kelly's work schedule required her to be at work from 8:00 a.m. until 4:30 p.m., except on days when she worked late.[6] Greg also testified that Kelly began coming home late five nights a week. Additionally, Greg testified that from the last two weeks in April until May 17, 2002, Kelly would come home on week nights after work and then leave, thereafter returning home between 9:30 p.m. and as late as 11:00 p.m. Greg testified that Kelly was gone six nights a week.

---

[6] Kelly only worked a half day on Fridays.

4

¶14.    Greg became suspicious of Kelly's conduct.  Consequently, on April 15, 2002, Greg set up a tape recording system on the telephone at their residence.  Over the course of the next few weeks, Greg made approximately ten tapes.[7]  Based on what he heard on the tapes, Greg filed his action for divorce against Kelly.

## DISCUSSION

### I. Recusal.

¶15.    Pursuant to Canon 3, subdivision E, of the Code of Judicial Conduct, "Judges should disqualify themselves in proceedings in which their impartiality might questioned by a reasonable person knowing all the circumstances. . . ."  The test for recusal of a judge is stated as follows: "[W]ould a reasonable person, knowing all the circumstances, harbor doubts about the judge's impartiality?"  *In re Conservatorship of Bardwell*, 849 So. 2d 1240, 1247 (Miss. 2003); *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997).

¶16.    Judges are presumed to be qualified and unbiased.  *Farmer v. State*, 770 So. 2d 953, 956 (Miss. 2000).  This Court has held in numerous cases that the "evidence presented must produce a reasonable doubt as to a judge's impartiality."  *Dodson v. Singing River Hosp. Sys.*, 839 So. 2d 530, 533 (Miss. 2003); *see also* *Tubwell v. Grant*, 760 So. 2d 687, 688 (Miss. 2000); *Beyer v. Easterling*, 738 So. 2d 221, 228 (Miss. 1999); *Walls v. Spell*, 722 So. 2d 566, 571 (Miss. 1998).  This presumption is overcome only by showing beyond a reasonable doubt that the judge was biased or unqualified.  *Upton v. McKenzie*, 761 So. 2d 167, 172 (Miss. 2000).  Impartiality is viewed under the "totality of the circumstances" analysis using

---

[7] These tapes were made until on or around May 20, 2002, the date of separation.

an objective reasonable *"person*, not a lawyer or judge," standard. *Dodson*, 839 So. 2d at 534

(citing *Collins v. Joshi*, 611 So. 2d 898, 903 (Miss. 1992) (Banks, J., concurring)) (emphasis

in original). In *Dodson*, this Court recently stated:

> ¶ 12. Surely, it could not have been intended that the standard for recusal be so stringent as to warrant the criminal law "beyond a reasonable doubt" burden of proof. Quoting *Turner*, we stated in *Collins* that "[t]o overcome the presumption, the evidence must produce a 'reasonable doubt' (about the validity of the presumption)." 611 So. 2d at 901. However, in the very next paragraph we stated, "This presumption may only be overcome by evidence showing *beyond a reasonable doubt* that the judge was biased or not qualified." *Id.* (emphasis added). In *Norton*, we quoted *Collins* in applying the "beyond a reasonable doubt" burden. 742 So. 2d at 131. Also, in *Upton*, we cited *Bredemeier* and *Turner* as the sources of the beyond a reasonable doubt burden when both of those cases clearly applied the "produces a reasonable doubt" burden. *Upton*, 761 So. 2d at 172. *See Bredemeier*, 689 So. 2d at 774 (quoting *Turner*); *Turner*, 573 So. 2d at 678 (applying "must produce a reasonable doubt" burden).

> ¶ 13. The stringent "beyond a reasonable doubt" burden is, in our opinion, incompatible with the standard of a hypothetical "reasonable person knowing all the circumstances." The proper standard is that recusal is required when the evidence produces a reasonable doubt as to the judge's impartiality. The misapplication of the "beyond a reasonable doubt" burden in the above-discussed cases was nothing more than a minor oversight and would have led to the same conclusion. We now clarify the burden of proof from what was previously stated in *Upton*, *Norton*, and *Collins*.

839 So. 2d at 533.

¶17. When a judge is not disqualified under the constitutional or statutory provisions, the

decision is left up to each individual judge and is subject to review only in a case of manifest

abuse of discretion. *Buchanan v. Buchanan*, 587 So. 2d 892, 895 (Miss. 1991). In

determining whether a judge should have recused himself, this Court must consider the trial

*in its entirety* and examine every ruling to determine if those rulings were prejudicial to the

6

moving party. *Jones v. State*, 841 So. 2d 115, 135 (Miss. 2003) (citing *Hunter v. State*, 684 So. 2d 625, 630-31 (Miss. 1996)).

¶18.    In the case sub judice, Kelly filed a motion for recusal requesting that Judge Bise recuse himself from the case.[8]   This motion was based upon Kelly's concern about an alleged relationship between Judge Bise and Greg's counsel, Albert L. Necaise.   Kelly stated that she received information that Necaise introduced Judge Bise at a political rally[9] during Judge Bise's election campaign of 2002.    Kelly claimed that Judge Bise "recused" himself from hearing the case during his election.[10]    After Judge Bise had "recused" himself, this matter was set on Judge Teel's docket, but was later reassigned to Judge Bise after Judge Teel was unsuccessful on his bid for re-election.[11]

¶19.    A thorough review of the record reveals that Judge Bise properly denied the motion to recuse.    In her brief, Kelly alleges that Necaise was a "*strong supporter*" of Judge Bise. However, the record reflects that Necaise introduced all of the judicial candidates that day at the Dedeaux rally–not just Judge Bise.    Furthermore, Necaise had been introducing candidates at the Dedeaux rally for over twenty years.    If judges were required to recuse themselves in every case that an attorney had introduced them at a public gathering, there would only be a few cases that judges could hear.

---

[8] This motion was filed on February 6, 2003, and heard on February 12, 2003.

[9] More specifically, the Dedeaux community rally.

[10] This alleged "recusal" occurred during an ex parte conference with Kelly's counsel, Herbert J. Stelly, Sr.  Necaise, Greg's counsel, was not present during this conference.

[11] This matter was reassigned to Judge Bise's docket on the request of Necaise because Judge Bise had previously heard the temporary issues.

¶20.    As previously mentioned, not only does this Court view the circumstances present at the time the disqualification motion is considered by the trial court, we also view all of the rulings Judge Bise made at trial to determine whether they were prejudicial to the Kelly. *Jones*, 841 So. 2d at 135 (citations omitted).   Kelly attempts to link the admissibility of the audio tapes contained in Exhibit 1 with a claim that this proves Judge Bise's prejudice against her.  As discussed *infra*, this assignment of error is without merit.

¶21.    An objective reasonable person would not question Judge Bise's impartiality. Consequently, after reviewing the "totality of the circumstances," we find that Judge Bise did not err when he denied Kelly's motion for recusal.

## II. Audio Recordings.

¶22.    To be admitted into evidence, an audio recording must meet the requirements of Mississippi Rule of Evidence 901.  *Doby v. State*, 557 So. 2d 533, 541 (Miss. 1990).   In order to properly admit the tape into evidence, it must be authenticated under Rule 901(a) and must be relevant under Mississippi Rule of Evidence 401.  *Middlebrook v. State*, 555 So. 2d 1009, 1011-12 (Miss. 1990).  According to Mississippi Rule of Evidence 901(b)(5):

> *Voice Identification*.    Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

¶23.    "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused.   Unless the trial judge's discretion is so abused as to be prejudicial to a party, this Court will not reverse his ruling."    *Stewart v. Stewart*, 645 So. 2d 1319, 1320 (Miss. 1994) (quoting *Century 21 Deep*

8

*South Props., Ltd. v. Corson*, 612 So. 2d 359, 369 (Miss. 1992)); *see also* ***Rushing v. Rushing***, 724 So. 2d 911, 914 (Miss. 1998). The question of whether the evidence presented satisfies Mississippi Rules of Evidence 401 and 901 is left to the discretion of the trial judge. Miss. R. Evid. 104(a).

¶24. Failure to make a contemporaneous objection constitutes waiver of the objection and cannot be raised for the first time on appeal because the trial court is denied the opportunity to consider the issue and possibly remedy the situation. ***De La Beckwith v. State***, 707 So. 2d 547, 574 (Miss. 1997). Furthermore, when a party makes an objection on specific grounds, it is considered a waiver regarding all other grounds. ***Burns v. State***, 729 So. 2d 203, 219 (Miss. 1998).

¶25. In the case sub judice, Kelly alleges error due to the fact that Mike Blackwell's voice was never identified on the tapes. However, the only objection to the tape recordings prior to their submission into evidence was related to a chain of custody issue–Kelly contended that if it were shown that the tapes had not been tampered with, that there was no objection. In regard to chain of custody, Judge Bise ruled that there was no break in the chain of custody, and the tapes should be admitted.[12] Further, the trial court found that the tape recordings were relevant, there was sufficient testimony on which to find that the tapes fairly and accurately depicted the conversations which Kelly had, and that they had not been tampered with. Kelly failed to object contemporaneously in regard to identification of the voices on the tape at the

---

[12] Greg testified that the tape recorder was purchased by him and placed on the telephone line beneath the parties' mobile home; that he could identify the voice on the tape; that the tapes had been made on the dates represented on the tape boxes; that the tapes had been properly stored at his parents' home across the street in a lock box; and that the tapes had not been altered.

time the tapes were admitted into evidence. Consequently, Kelly waived her objection and, thus, is procedurally barred from raising this issue for the first time on appeal.

¶26. Notwithstanding this procedural bar, Kelly argues that it was improper for Judge Bise to examine Greg Copeland on the stand regarding the identification of the voices on the tapes. After the examination by the trial court, Kelly, for the first time, objected to the trial court's examination, claiming that the voices on the tape were never identified. This objection was made well after the tapes had already been admitted into evidence. Both parties were given the opportunity at the close of the case to brief the court with regard to Kelly's objection to the court's examination of Greg, but both failed to do the same.

¶27. According to Mississippi Rule of Evidence 614(b), "[t]he Court may interrogate witnesses, whether called by itself or a party." *See generally* **Rushing**, 724 So. 2d 911. However, "it is grounds for reversal if the trial judge abuses the authority to call or question a witness abandoning his impartial position as a judge and assuming an adversarial role." **Powell v. Ayars**, 792 So. 2d 240, 248 (Miss. 2001) (citing **West v. State**, 519 So. 2d 418, 422-24 (Miss. 1988)); *see* **Layne v. State**, 542 So. 2d 237, 242 (Miss. 1989) (trial courts must honor the line between detachment and advocacy). The powers of a chancellor to question witnesses are much broader than those of circuit judges. **Griffin v. State**, 171 Miss. 70, 70, 156 So. 652, 653 (1934).

¶28. Though judicial participation in trial proceedings carries inherent risks, there is no requirement for the trial judge solely to be a silent observer. **Bumpus v. State**, 166 Miss. 276, 281-82, 144 So. 897, 899 (1932); *see generally* **Burnett v. State**, 204 Miss. 280, 37 So. 2d

310 (1948) (trial court's examination of witnesses, which probably served only to strengthen the state's case was improper, but harmless in view of defendant's manifest guilt).

¶29.	Notwithstanding the procedural bar for failing to object contemporaneously at the time of admission of the tapes, we find that Judge Bise did not abuse his discretion by examining Greg on the stand. Consequently, Kelly's assignment of error on this issue is devoid of any merit.

### III. Child Custody.

¶30.	In a child custody case, "[t]his Court will not disturb a chancellor's judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Chapel v. Chapel*, 876 So. 2d 290, 292-93 (Miss. 2004) (citing *Townsend v. Townsend*, 859 So. 2d 370, 371-72 (Miss. 2003)); *see also Griffin v. Campbell*, 741 So. 2d 936, 937 (Miss. 1999) ("A chancellor sitting as a finder of fact is given wide discretion"). "However, where the chancellor improperly considers and applies the *Albright* factors, an appellate court is obliged to find the chancellor in error." *Hollon v. Hollon*, 784 So. 2d 943, 946 (Miss. 2001). This Court will not overturn a chancellor's decision if there is substantial credible evidence in the record to support his findings of fact. *Smith v. Jones*, 654 So. 2d 480, 485 (Miss. 1995). "It is appropriate to consider here that our limited scope of review directs that '[w]e will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child.'" *Ash v. Ash*, 622 So. 2d 1264, 1266 (Miss. 1993) (quoting *Yates v. Yates*, 284 So. 2d 46, 47 (Miss. 1973)). Unless the

11

evidence demands a finding contrary to the chancellor's decision, this Court will not disturb a custody ruling. ***Phillips v. Phillips***, 555 So. 2d 698, 700 (Miss. 1989).

¶31.   This Court has stated time and time again that the polestar consideration in child custody cases is the best interest and welfare of the minor child. ***Brekeen v. Brekeen***, 880 So. 2d 280, 283 (Miss. 2004); ***Hollon***, 784 So. 2d at 946; ***Albright v. Albright***, 437 So. 2d 1003, 1005 (Miss. 1983).   The ***Albright*** factors used to determine what is in the "best interest" of the child in regard to custody are:

> 1) age, health and sex of the child; 2) determination of the parent that had the continuity of care prior to the separation; 3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; 4) the employment of the parent and responsibilities of that employment; 5) physical and mental health and age of the parents; 6) emotional ties of parent and child; 7) moral fitness of parents; 8) the home, school and community record of the child; 9) the preference of the child at the age sufficient to express a preference by law; 10) stability of home environment and employment of each parent; and 11) other factors relevant to the parent-child relationship.

***Hollon***, 784 So. 2d at 947 (citing ***Albright***, 437 So. 2d at 1005).

¶32.   Here, the chancellor undertook a lengthy analysis of the various ***Albright*** factors and explained in his judgment how he evaluated the evidence bearing on each factor.   The chancellor then proceeded, as to each such factor, to determine which competing parent was favored.   Only after that analysis did the chancellor then reach the ultimate question of which party should be awarded custody.

¶33.   As to six of the ***Albright*** factors, the chancellor concluded that the factors were either irrelevant or that the evidence did not appear to favor one parent over the other.   Those factors that favored neither parent were: (1) age of the child; (2) health of the child; (3) age of the parents; (4) physical and mental health of the parents; (5) emotional ties of the parent and

12

child; and (6) home, school and community record of the child. Of the remaining factors, the chancellor concluded that all favored Greg; none favored Kelly. The chancellor found that the sex of the child, continuity of care, best parenting skills, willingness and capacity to provide primary child care, employment responsibilities of the parents, moral fitness of the parents, stability of the home environment and employment of each parent, all favored Greg.

### A. Age.

¶34. In **Buntyn v. Smallwood**, 412 So. 2d 236, 238 (Miss. 1982), this Court noted that if the mother of a child of tender years is fit, then she should be awarded custody. "[A] child is no longer of tender years when that child can be equally cared for by persons other than the mother." **Mercier v. Mercier**, 717 So. 2d 304, 307 (Miss. 1998). However, this doctrine has been weakened in recent years and now is only a presumption to be considered along with the other **Albright** factors. **Hollon**, 784 So. 2d at 947.

¶35. The age factor slightly weighed in favor of the Kelly; however, this alone does not rise to the level of manifest error and certainly does not warrant reversal. This Court has stated:

> In the present case, the chancellor simply stated, "[a]t the present time, neither Belinda nor Jason enjoy a distinct advantage in regard to any of these three factors." While neither party may not have enjoyed a "distinct advantage" as to this issue, the tender years presumption is still a viable consideration. Consequently, this factor probably should have weighed slightly in favor of Belinda, unless there was some evidence to the contrary which a review of the record did not readily reveal. However, this minor error alone does not rise to the level of manifest error and certainly does not warrant reversal. In addition, there is the practical consideration that Lauren is presently over four years old and may not be subject to the tender years idea any longer.

13

*Lee v. Lee*, 798 So. 2d 1284, 1289 (Miss. 2001). However, in *Law v. Page*, 618 So. 2d 96, 101 (Miss. 1993), this Court held that "the tender years doctrine seems less controlling, especially when considering [the child's] male gender."

¶36. Following the ruling in *Lee* and *Law*, we find that the chancellor did not commit manifest error when he concluded that the age of the child favored Greg.

*B. Sex of Child.*

¶37. The chancellor found that the sex of the child favored Greg because both he and Mason were both males.

*C. Continuity of Care.*

¶38. The chancellor specifically found that the continuity of care factor favored Greg, given the fact that he would go and sit with Mason when he came home from work, or he would begin preparation of Mason's food and get Mason ready for bed until Kelly came home from work. Further, the chancellor noted that during Kelly's custodial periods, she would put Mason in daycare with several other children, while Greg put Mason in the custody of his mother.

¶39. Kelly argues on appeal that the chancellor misapplied the law because the Court looked to the continuity *prior to and after* separation of the parties. However, this Court in *Jerome v. Stroud*, 689 So. 2d 755, 757 (Miss. 1997), stated that time between separation and trial should be considered in determining continuity for children. *See also Caswell v. Caswell*, 763 So. 2d 890, 893 (Miss. Ct. App. 2000). Additionally, Kelly admitted (after denying) on the tape recordings that Greg would get up with Mason during the middle of the night, that Greg kept Mason and Allie from the time he got off work until she got home, and Greg kept Mason and Allie while she was with Mike Blackwell.

14

*D. Best Parenting Skills.*

¶40.    The chancellor concluded that Greg had the best parenting skills.    In reaching his conclusion, the chancellor noted that Greg had a good relationship with Mason and Allie, that Kelly admitted on the witness stand that Greg would feed and dress Mason in the morning by the time she and Allie were ready to leave the house, and that Kelly spent "family time" away from the home while she was with Mike Blackwell.

*E. Willingness and Capacity to Provide Primary Care.*

¶41.    In concluding that this factor weighed in favor of Greg, the chancellor noted that Kelly would leave Mason during the day with a nursery worker who had number of other children to look after also, while Greg would leave Mason with his mother who lived across the street.

*F. Employment Responsibilities of the Parents.*

¶42.    Viewing the employment responsibilities of the parents and stability of the home environment and employment factors, the chancellor determined that Greg had the more flexible schedule, thus, affording him more time to spend with Mason.    Furthermore, Greg has owned his own business for the past ten years.    Greg has lived in the same home since 1996, and with his family prior to that time, both locations being "on the family compound."

*G. Other Factors.*

¶43.    Kelly argues that the chancellor erred because he did not consider the relationship between Allie and her half-brother, Mason, when he separated them.    However, the chancellor did consider the effects of separating the children when he stated in his decree, footnote 4: "It is clear to the Court that Greg Copeland and his step-daughter, Allie[,] have bonded, thus[,]

making a custody decision doubly difficult, for the decision of this Court will have an impact not only on Mason and his parents, but upon Allie and her sibling and Allie and her step-father." There is no "hard and fast" rule that the best interest of siblings will be served by keeping them together. ***Sellers v. Sellers***, 638 So. 2d 481, 484 (Miss. 1994) (citing ***Sparkman v. Sparkman***, 441 So. 2d 1361, 1362 (Miss. 1983)).

¶44.    Based upon this detailed analysis, the chancellor concluded that the best interest of the child dictated that he remain in the primary custody of Greg.

## CONCLUSION

¶45.    Kelly's arguments, in their best light, simply take issue with the conclusions the chancellor drew from the evidence.   Our review of the record convinces us that there is substantial credible evidence to support the findings and conclusions of the chancellor.   Were this Court to disturb those findings on the present state of this record, we would merely be substituting our own assessment of the evidence for that of the chancellor.   In accord with *Ash* and *Yates*, that is not within our authority.

¶46.    Finding that the chancellor properly considered and applied the *Albright* factors, given our limited scope of review, and the chancellor's specific findings that are supported by the record, we cannot say that the chancellor was manifestly wrong in finding that Mason's best interests would be served by being placed in Greg's custody.   The chancellor's findings were thorough, deliberate and supported by substantial evidence.   Therefore, the chancellor's judgment is affirmed.

¶47.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**