ISHEE, J.,
for the court.
¶ 1. Donald Glenn Jones (“Don”) and Julie Daley Jones (“Julie”) were granted a divorce on the ground of irreconcilable differences on November 6, 2007, and Don was awarded custody of their daughter, Samantha. Aggrieved, Julie now appeals the judgment of the Jefferson Davis County Chancery Court. Finding no error, we affirm.
FACTS
¶ 2. Don and Julie were married on August 10, 1996. They had one child, a daughter named Samantha, who was born on February 5, 1997. Throughout their marriage, they lived in Prentiss, Mississippi, directly across the street from Don’s father. Julie stayed at home and eared for Samantha for the first three years after she was born. When Julie went back to work, the couple shared the household and parenting responsibilities, and Don’s family helped care for Samantha after school when needed.
¶ 3. On September 19, 2001, the parties filed a joint complaint for divorce, citing irreconcilable differences as the ground, in the Chancery Court of Jefferson Davis County. The filed divorce papers provided that Don would maintain the family residence and would have custody of Samantha. Very soon after the complaint was filed, Julie moved to Rhode Island to live with a man she had met on the Internet named Joe; however, the relationship between Julie and Joe ended within several weeks of her arrival. Don traveled to Rhode Island approximately two months after Julie had left Prentiss to ask her to try and reconcile their marriage. She agreed, and they returned home and resumed their marriage for the next six years. During that time, they both worked outside of the home and shared in the parental responsibilities. Don’s family lived nearby, and they continued to help care for Samantha.
¶ 4. Julie spent a great deal of time on the computer, where she met people in internet forums. In 2004, she began corresponding in a chat room with Steve Ash-ton and his wife, who lived in England. Their correspondence continued for over a year, and eventually, Julie and Don made plans to take Samantha to visit the Ash-tons in England for a week in 2006. The plans changed, however, from a one-week trip to a two-week trip, and Don was not able to take that much time off from work. As a result, Julie and Samantha made the trip, while Don stayed home. Unbeknownst to Don, when they were in England, Julie stayed at the Ashtons’ home, and Samantha stayed at the home of the Ashtons’ relatives. Julie returned home with a nude portrait of herself that Steve had painted, which caused suspicions to arise over the nature of her relationship with Steve, but Julie insisted that their relationship was strictly one of friendship. She argued that Steve was an artist, and the portrait was actually of another person with Julie’s head superimposed on the body.
¶ 5. On March 28, 2007, Don filed a complaint for divorce, child custody, and other relief, alleging uncondoned adultery, habitual cruel and inhuman treatment, and, in the alternative, irreconcilable differences as grounds for divorce. Julie filed her answer to the complaint on May 9, 2007, asserting recrimination and condo-nation, and she counterclaimed for a divorce, alleging the grounds of uncondoned adultery, habitual cruel and inhuman treatment, and, in the alternative, irreconcilable differences. The following month, the chancery court entered a temporary order granting joint legal and physical temporary custody of Samantha to both parties. Under the order, custody was alternated *778 every two weeks. Don remained in the marital home after the separation, and Julie moved to her mother’s home in Hatties-burg, Mississippi.
¶ 6. The parties filed a property settlement agreement, joint motion to withdraw fault grounds for divorce, and joint consent for judicial determination of outstanding issues on August 21, 2007, and a hearing was held that day on the issues of custody, visitation, and child support. On August 23, 2007, the chancery court entered a temporary order of visitation, whereby Don was awarded physical custody of Samantha so she could continue attending Prentiss Christian School as she had prior to the separation.
¶ 7. The chancery court’s bench ruling was rendered on October 8, 2007, and Julie filed a motion for reconsideration on October 14, 2007. The judgment of divorce was entered on November 6, 2007, by which Don was awarded physical custody of Samantha with Julie receiving visitation rights. Don filed a motion to dismiss the motion for reconsideration on December 3, 2007. The chancery court denied the motion for reconsideration on December 4, 2007, and Julie filed this appeal. Finding no error, we affirm the judgment of the chancery court.
STANDARD OF REVIEW
¶ 8. “An appellate court is to affirm findings of fact by chancellors in domestic cases when they are ‘supported by substantial evidence unless the chancellor abused [his] discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.’ ” Parker v. South, 913 So.2d 339, 343(¶ 9) (Miss.Ct.App.2005) (quoting Robison v. Lanford, 841 So.2d 1119, 1122(¶ 9) (Miss.2003)).
ANALYSIS
¶ 9. The polestar consideration in child custody eases is the best interest of the child. Rushing v. Rushing, 724 So.2d 911, 916(¶ 24) (Miss.1998). A court determines which parent will be awarded custody by analyzing the factors set forth in the case of Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Norman v. Norman, 962 So.2d 718, 720(116) (Miss.Ct.App.2007). The Albright factors include:
1) age, health and sex of the child; 2) determination of the parent that had the continuity of care prior to the separation; 3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; 4) the employment of the parent and responsibilities of that employment; 5) physical and mental health and age of the parents; 6) emotional ties of [the] parent and child; 7) moral fitness of [the] parents; 8) the home, school and community record of the child; 9) the preference of the child at the age sufficient to express a preference by law; 10) stability of home environment and employment of each parent; and 11) other factors relevant to the parent-child relationship.
Brekeen v. Brekeen, 880 So.2d 280, 283-84(¶ 5) (Miss.2004) (citations omitted). In the event that a chancellor improperly considers and applies the Albright factors, we are obligated to find him in error. Hollon v. Hollon, 784 So.2d 943, 946(¶ 11) (Miss.2001).
¶ 10. The chancellor conducted an Al-bright analysis and found the following:
1. Age, health and sex of child: neutral
2. Continuity of care prior to the separation: neutral
3. Best parenting skills: neutral
4. Willingness and capacity to provide for child: favors Don. This decision was based on Don’s flexible work schedule and the fact that he would *779 continue to reside in the home where Samantha had been reared, which is located near the home of his father, who helps look after Samantha. Julie, on the other hand, moved into her mother’s home in Hattiesburg, where she intended to live for approximately one year until she was able to find a place of her own.
5. Employment of the parents and responsibilities of employment: neutral
6. Emotional ties of the parent/child: neutral
7. Moral fitness factor: favors Don. The chancellor stated: “I find the moral fitness favors Mr. Jones more. I find that Mrs. Jones has, on at least two occasions, met people over the [I]nternet. And on one occasion left, and went to Rhode Island to live with a man whom she had only met, prior to her leaving, on the [I]nternet.... On another occasion, Mrs. Jones went to England to stay with some people, [whom] she only knew by meeting them over the [I]n-ternet. Mrs. Jones came home with a nude drawing of herself which she says was done by the man known as ‘Lobo,’ which she says was a nude drawing of some other person’s body that had her head on it. Lobo was the man whose house she resided in while she was staying in England.”
8. Home, school, and community record of the child: favors Don. Don continued to live in the home and community where Samantha had lived prior to the separation. In addition, she would be able to attend Prentiss Christian School, as she had done since beginning school. Julie planned on enrolling Samantha in Oak Grove School in Hattiesburg.
9. Preference of the child: neutral
10. Stability of home environment: favors Don. The chancellor found that if Don was awarded custody, Samantha would “be able to remain in the family home, and attend school at her school, and stay close [to] their relatives.” To the contrary, if Julie was awarded custody, Samantha “would live in the home of [Julie’s] mother in Hattiesburg; would be uprooted from her surroundings; and, when [Julie] found a place of her own, Samantha would again be uprooted.”
11. Parenting and the parent/child relationship: favors Don. The chancellor expressed concern over Julie’s using the Internet to meet and form relationships with people.
DISCUSSION
I. The chancery court properly considered and applied the Albright factors in deciding that the parenting skills factor did not favor either parent and that the parent/child relationship factor favored Don.
¶ 11. Julie argues that the chancellor erred in finding that the best parenting skills factor did not favor either parent, as they both exhibited good parenting skills, and then in finding that the parenting and parent/child relationship factor favored Don. With regard to the parenting and parent/child relationship factor, the chancellor stated:
I am concerned about [Julie’s] use of the Internet to meet people, [whom] she gains trust in, and on the spur of the moment picks up and go[es] [to] meet them. On the trip to England, she took [Samantha] with her to meet people [whom] she had only talked with on the *780 [IJnternet. And while [Julie] was residing in the home of this man, she let [Samantha] stay with other people she had just met, in another location, away from the home where she was staying. On the other occasion, [Julie] took off to Rhode Island to meet and stay with another person she had only met on the [I]nternet. And, at that time, she left her husband and child to live with this man. When the Court asked her if she met another person over the [I]nternet, would she, again, take off and meet this person? Her answer was, she did not know. I’m concerned about what could happen to [Samantha] and [Julie] if she takes off to far away places to meet someone [whom] she only knows through the [I]nternet; or, even if she meets these people and they come here to her house in Hattiesburg, or wherever she will be living. I don’t believe this is in the best interest and welfare of the child for this to happen.
¶ 12. Although Julie may have exhibited good parenting skills, we share in the chancery court’s concern of Julie’s using the Internet to meet people and her taking Samantha with her to meet these people. Accordingly, we find that the chancellor properly applied the Albright factors, and the results favored physical custody of Samantha being awarded to Don. This issue is without merit.
II. The chancery court properly applied the evidence to the Albright factors and properly awarded Don custody of Samantha.
¶ 13. Julie complains that the chancellor placed too much emphasis on her use of the Internet to meet people and on her trips to Rhode Island and England. She alleges that the chancellor overlooked “voluminous evidence” that weighed in favor of her receiving custody of Samantha, and she asserts that the chancellor devoted almost half of his ruling and Albright analysis to Julie’s moral fitness. She further asks this Court to consider applying a theory of attenuation to remove the “taint” of any of her earlier behavior that may adversely affect present considerations.
¶ 14. According to the theory of stare decisis, “absent powerful countervailing considerations, like cases ought to be decided alike,” and “long[-]established legal interpretations ought not lightly be disturbed.” State ex rel. Moore v. Molpus, 578 So.2d 624, 634 (Miss.1991). The theory of attenuation has never before been used in child custody cases; therefore, we will adhere to the existing law and utilize the Albright factors.
¶ 15. It is true that a chancellor may be found to have abused his discretion by placing too much emphasis on one Albright factor. See Brekeen, 880 So.2d at 287(¶ 21). However, we do not find that to have occurred in this ease. Moral fitness was just one of the five Albright factors that the chancellor found to weigh in favor of Don, while finding the remaining six factors to be neutral. The chancellor took into account numerous benefits that would result from Samantha’s living with Don, which included: remaining in the same home and city in which she had been reared, continuing to attend the same school that she had attended prior to the separation, living across the street from relatives who help in caring for her, and avoiding being uprooted from her home once now and then again in a year, as she would be with Julie when Julie found her own place.
¶ 16. Accordingly, this Court finds that the chancellor properly considered and applied the Albright factors in making his decision to award custody of Samantha to Don. We, therefore, affirm the judgment of the chancery court.
*781 ¶ 17. THE JUDGMENT OF THE JEFFERSON DAVIS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.