# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01258-SCT

*MARY JANE BORDEN*

*v.*

*EDWARD SHANNON BORDEN*

## <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2012 |
| TRIAL JUDGE: | HON. TALMADGE D. LITTLEJOHN |
| TRIAL COURT ATTORNEYS: | J. MARK SHELTON |
| | JANA L. DAWSON |
| | DAVID O. BUTTS, JR. |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | J. MARK SHELTON |
| | JANA L. DAWSON |
| ATTORNEY FOR APPELLEE: | DAVID O. BUTTS, JR. |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND REMANDED - 10/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     In a divorce and child-custody dispute between Shannon and Mary Jane Borden, the chancellor awarded custody of their two sons to Shannon, the father. The Court of Appeals affirmed the judgment. Finding that the chancellor gave undue weight to Mary Jane's misconduct under three separate *Albright* factors, and that the chancellor erred in rejecting the guardian ad litem's recommendation without providing reasons and a summary of the

guardian's report, we reverse the judgments of Court of Appeals and the chancery court and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2.     The facts and procedural history have been taken from the Court of Appeals opinion.

***Borden v. Borden***, 130 So. 3d 1168 (Miss. Ct. App. 2014).

> Shannon and Mary Jane were married in Memphis, Tennessee, on September 10, 2000. During the marriage, the couple had two children, Elijah (Eli), born December 5, 2002, and William, born November 20, 2006. Shannon worked in a management position for Penske Trucking Company. Mary Jane worked full-time as a nurse at St. Joseph's Hospital. In 2005, the couple moved to Tupelo, Mississippi, due to Shannon's job transfer. Mary Jane continued to work as a nurse in Memphis, but she only worked sixteen days per year. When she worked in Memphis, she stayed there overnight.

> After the move to Tupelo, Mary Jane and Shannon began to experience problems in their marriage. The couple separated on August 16, 2010. Mary Jane picked up the oldest child from school and took both children with her to her parents' home in Tennessee. Mary Jane did not tell Shannon she was leaving. Mary Jane also took her computer with her. Two days later, Shannon filed a complaint for divorce on the grounds of habitual cruel and inhuman treatment and irreconcilable differences. On August 20, 2010, Mary Jane filed her answer and counter-complaint for divorce on the same grounds.

> On August 30, 2010, Mary Jane filed a motion to appoint a guardian ad litem and for a forensic examination of the children. According to Mary Jane, Eli and William exhibited behavior that led Mary Jane to believe they had been sexually abused. Although Mary Jane never alleged that anyone in particular had abused the children, she states in her brief that her suspicion of sexual abuse "arose from (1) alarming statements made by the children, and (2) bizarre responses given by Shannon." The chancellor appointed Jonathan Martin as guardian ad litem to investigate the allegations and represent the interests of the children. The guardian ad litem interviewed Shannon, Mary Jane, their two children, and several other individuals. The guardian ad litem also had polygraph examinations administered to both Mary Jane and Shannon. The results of the polygraph examinations showed that both parties were being truthful. However, the investigation revealed no evidence that the children had been sexually abused. Based on his ***Albright*** analysis, the

guardian ad litem recommended that Mary Jane receive primary physical custody of the children.

On November 9, 2010, Mary Jane and Shannon entered an agreed temporary order based on the guardian ad litem's recommendations. The parties were awarded joint legal custody of the children, and Mary Jane was awarded primary physical custody. Shannon was awarded reasonable visitation.

On November 30, 2010, Shannon filed an amended complaint to include adultery as an additional ground for divorce. Shannon alleged that prior to their separation, Mary Jane had engaged in extramarital affairs with two of her old high-school classmates, Eric Brown and Brian Hurt. Brown and Hurt both lived in Memphis. Sometime between January 2008 and November 2009, Mary Jane reconnected with Brown and Hurt via Facebook.

During October 2009, Mary Jane was photographed with both Brown and Hurt at a bar in Memphis. In July 2010, Mary Jane went to a friend's birthday party in Memphis, where both Hurt and Brown were present. Mary Jane admitted to communicating with Hurt and Brown via Facebook, but she denied that she had an extramarital affair with either of them. However, Mary Jane admitted that she engaged in inappropriate sexual communications with Brown through Facebook. She also admitted that she and Brown met in Tupelo during November 2009. Brown picked her up at a shopping center across the street from his hotel room. They then went back to Brown's hotel room, but their meeting was interrupted by a surprise visit by Brown's wife, who confronted Mary Jane regarding her inappropriate Facebook communications with Brown.

The parties went to trial on August 8-11 and September 26, 2011. During the trial, Shannon introduced a seventy-five page transcript of Facebook chats between Mary Jane and Brown. The chats, which contained numerous sexual references, began in November 2009. Suffice it to say, some of the messages were quite explicit. According to Mary Jane, her inappropriate Facebook chats with Brown occurred during a period where she and Shannon were experiencing difficulties in their marriage. Mary Jane also testified that her children were not home during her inappropriate contact with other men.

Ultimately, the chancellor found that there was insufficient evidence to award Shannon a divorce from Mary Jane based on adultery. The chancellor also found insufficient evidence to award either party a divorce based on habitual cruel and inhuman treatment. Thus, the chancellor declined to award

3

a divorce. But the chancellor awarded primary physical custody of the children to Shannon. . . .

¶3. On appeal, Mary Jane claims the chancellor committed two errors: (1) the chancellor improperly award custody of the children to Shannon as a punishment for her inappropriate behavior, and (2) the chancellor erred in not providing a summary of the guardian ad litem's recommendation and a summary of why the chancellor rejected that recommendation.

## DISCUSSION

¶4. "The standard of review in child custody cases is limited." *Floyd v. Floyd*, 949 So. 2d 26, 28 (Miss. 2007).This Court must "affirm findings of fact by chancellors in [child custody] cases when they are supported by substantial evidence unless the chancellor abused her discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Robison v. Lanford*, 841 So. 2d 1119, 1122 (Miss. 2003)."However, where the chancellor improperly considers and applies the *Albright* factors, an appellate court is obliged to find the chancellor in error." *Brekeen v. Brekeen*, 880 So. 2d 280, 283 (Miss. 2004) (quoting *Hollon v. Hollon*, 784 So. 2d 943, 946 (Miss. 2001)).

**I. Whether the court gave undue weight to Mary Jane's inappropriate behavior and thus improperly awarded custody to Shannon to punish Mary Jane.**

¶5. The polestar consideration in all child-custody cases is the best interests of the child. *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). Mississippi courts utilize what are known as the *Albright* factors to determine the best interests of the child and, thus, child custody. These factors are:

> 1) [the] age, health and sex of the child; 2) [a] determination of the parent that had the continuity of care prior to the separation; 3) which [parent] has the best

4

parenting skills and which has the willingness and capacity to provide primary child care; 4) the employment of the parent and responsibilities of that employment; 5) [the] physical and mental health and age of the parents; 6) [the] emotional ties of parent and child; 7) [the] moral fitness of parents; 8) the home, school and community record of the child; 9) the preference of the child at the age sufficient to express a preference by law; 10) [the] stability of [the] home environment and employment of each parent; and 11) other factors relevant to the parent-child relationship.

*Brekeen v. Brekeen*, 880 So. 2d 280, 284 (Miss. 2004); *Albright*, 437 So. 2d at 1005.

¶6.     Determinations of child custody, however, are not an opportunity to punish a parent for his or her marital misconduct. *See Brekeen*, 880 So. 2d at 284 (providing that custody should not be used as a sanction for marital fault). While moral fitness is clearly an important factor, it is only one of the *Albright* factors. And one *Albright* factor alone cannot be the sole basis for the award of child custody. *Albright*, 437 So. 2d at 1005; *Hollon v. Hollon*, 784 So. 2d 943, 952 (Miss. 2001).

¶7.     In circumstances similar to the current case, this Court held in *Brekeen v. Brekeen* that a chancellor had erred in giving undue weight to a single *Albright* factor. *Brekeen,* 880 So. 2d at 287. In that case, William Brekeen obtained a divorce from Barbara Brekeen on the ground of adultery. *Id.* The chancellor, relying heavily on the fact that Barbara had an affair, granted custody of the Brekeens' child to William. *Id.* at 286. Barbara appealed, and this Court found the chancellor erred in finding two of the *Albright* factors weighed in favor of William based on Barbara's affair. *Id.* at 285-87 (the two factors were moral fitness and other factors relevant to the parent-child relationship). This Court found the chancellor gave undue weight to Barbara's misconduct in finding both *Albright* factors favored William based on

5

the same misbehavior, and that the chancellor awarded William custody to punish Barbara. *Id.* at 287.

¶8.     In the current case, the chancellor found three separate *Albright* factors favored Shannon, based in whole or in part on Mary Jane's inappropriate extramarital contacts, none of which rise to the level of adultery. Mary Jane admittedly engaged in inappropriate sexual communications with men other than her husband. She also admitted to socializing with these men at bars and restaurants in Memphis and meeting one of them at a hotel. The chancellor correctly found these activities reflected poorly on Mary Jane's moral fitness. *See Brekeen*, 880 So. 2d at 287.  However, the chancellor erred in also finding that this same behavior weighed against Mary Jane regarding to two other *Albright* factors, parenting skills and stable home environment. *Id.*; *Hollon*, 784 So. at 951-52.

¶9.     In regard to Mary Jane's parenting skills, the chancellor found that "She should have been at home taking care of those children or should have been with them instead of out partying in Memphis or where ever she was at the night spots and going out on the town and meeting with another man at a motel." And regarding Mary Jane's ability to provide a stable home, the chancellor stated that Shannon provided a more stable home environment because Mary Jane took off with her children, and that she should have "stayed off the internet and stayed off of her contact [sic] with her two boyfriends especially and running around on her husband."

¶10.    In short, the chancellor found three separate *Albright* factors favored Shannon, in whole or in part, based on Mary Jane's inappropriate extramarital contacts. And after a complete review of the record, it is clear the chancellor used Mary Jane's misconduct as the

primary basis for awarding Shannon custody. Here, as in ***Brekeen***, we find the chancellor gave undue weight to Mary Jane's untoward behavior and awarded Shannon custody to sanction Mary Jane for her improper conduct. *See **Brekeen***, 880 So. 2d at 287; *see also **Albright***, 437 So. 2d at 1005 ("Marital fault should not be used as a sanction in custody awards.").

> **II. Whether the chancellor erred in not providing a summary of the guardian ad litem's recommendation and a summary of why the chancellor rejected that recommendation.**

¶11. In child-custody cases where there are allegations of abuse or neglect, courts must appoint a guardian. Miss. Code Ann.§ 93-5-23 (Rev. 2013); ***Floyd v. Floyd***, 949 So. 2d 26, 28 (Miss. 2007). And when the appointment is mandatory, chancellors, in their findings of fact, must include at least a summary of the guardian ad litem's recommendations. *Id.* While a chancellor is not bound by the guardian ad litem's recommendations, "if the court rejects the recommendations . . . , the court's findings must include its reasons for rejecting the guardian's recommendations." *Id.*; ***S.N.C. v. J.R.D., Jr.,*** 755 So. 2d 1077, 1082 (Miss. 2000).

¶12. In the current case, Mary Jane raised her concerns that the children might have been sexually abused. Accordingly, the chancellor appointed a guardian ad litem. The guardian ad litem conducted an investigation into the child-abuse claims and prepared a recommendation regarding custody of the children. The guardian ad litem found no evidence of abuse, and after an ***Albright*** analysis, determined that Mary Jane should be awarded custody.

¶13. When the guardian ad litem's appointment is mandatory, as in this case, the chancellor must include a summary of the guardian ad litem's recommendations in his or her findings

7

of fact and conclusions of law. *S.N.C.*, 755 So. 2d at1082. And "when a chancellor's ruling is contrary to [that] recommendation . . ." the court must state "the reasons for not adopting the . . . recommendation . . . in the findings of fact and conclusions of law." *Id.* While the chancellor in the current case acknowledged the guardian ad litem's recommendation, he did not provide a summary of the report or a summary of his reasons for rejecting the guardian ad litem's recommendation. Therefore, we find the chancellor erred in failing to do so.

## CONCLUSION

¶14.    While Mary Jane's behavior may have been inappropriate, that alone is an insufficient ground upon which to award custody to Shannon. By finding three *Albright* factors weighed against Mary Jane due to her misconduct, the chancellor gave her misdeeds undue weight, the result of which constitutes a punishment for Mary Jane's indiscretions. Furthermore, the chancellor's failure to provide a summary of the guardian ad litem's report and a summary of the reasons he rejected that recommendation was error. Therefore, the decision of the Court of Appeals and the judgment of the chancery court are reversed, and this case is remanded to the Chancery Court of Lee County for further proceedings consistent with this opinion.

¶15.    **REVERSED AND REMANDED.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

8