IRVING, P.J.,
dissénting:
¶ 26. It seems clear to me from reading the record that Jennifer’s right to due process was abridged, thereby denying her a fair hearing and resulting in the loss of custody of Delaney. I am aware that Jennifer’s issue on appeal is that the chancellor erred in not appointing sua sponte a guardian ad litem (GAL). I am also aware that our law is well settled that in every custody dispute, the polestar consideration is the best interest of the minor child. However, in my judgment, the failure of a chancellor to appoint a GAL when the chancellor is statutorily required to do so implicates a denial of due process that brings into question whether the child’s best interest has been served. It also seems clear to me that Jennifer’s economic situation, not her failure to adequately care for her daughter, was the reason for her loss of custody. Since our jurisprudence guarantees every American citizen due process of law before valuable rights may be withdrawn by the State and prohibits the awarding or modification of custody based solely on one’s economic station in life, I-must dissent. However, I do so with due respect to both the majority and the chancellor who heard this matter,
¶27. Our jurisprudence is clear that before there can be a change in a prior custodial arrangement, a material change in circumstances that adversely affects the minor child must have occurred. The phrase “must have occurred” means that the prejudicial change must have arisen since the initial custody order.
¶28. In order to elucidate the point that I make regarding the deprivation of due process suffered by Jennifer and her resulting ltíss of custody of Delaney, it is necessary that I set forth in chronological ordér the critical procedural facts contained in the record, as well as the substantive facts. I recite the procedural facts first, reserving my discussion of the substantive facts until my discussion of the issue.
¶ 29. Josh and Jennifer were divorced on June 8, 2011, and Jennifer was awarded custody of Delaney, who was four years old. On May 23, 2012, Jennifer sent a letter to the clerk of the Chancery Court of Rankin County, advising the clerk of her new address in Lumberton, Mississippi. Two days later, on May 25, 2012, Josh filed his motion for modification of custody. In my opinion, it is noteworthy that in his motion, Josh did not allege any facts explaining the alleged material change in circumstances that was adversely affecting Delaney’s well-being. I quote the totality of his averment: “Since entry of the former [jjudgment of [d]ivoree, certain material changes in cir *811 cumstances have occurred which have had and will likely continue to have an adverse impact upon [Delaney], Such changes in circumstances justify a modification of the former [j]udgment to award custody of the minor child to [Josh].”
¶ 30. On May 29, 2012, the clerk issued a - summons to Jennifer, commanding her to appear and defend against Josh’s motion for modification on October 16, 2012, at 9:00 a.m. Although the summons was not denoted a summons under Rule 81 of the Mississippi Rules of Civil Procedure, that must have been the kind of summons it was. I should note that the docket and the record do not reflect an order setting Josh’s motion for hearing on October 16, 2012, nor is there an order continuing the motion for hearing to a later date. In any event, the hearing was not held until July 18, 2013, and September 11,2013.
¶31. On October 5, 2012, eleven days before the scheduled hearing on Josh’s motion for modification, Josh issued notice to take Jennifer’s deposition by oral examination on October 10, 2012. On October 10, 2012, Jennifer filed a response to Josh’s motion for modification, seeking to have it dismissed for lack of factual specificity “or, in the alternative, ... for a more definite statement or for [a] continuance to conduct discovery.” Five days later, on October 15, 2012, the chancellor denied Jennifer’s motion for a continuance but did not order Josh to give her a more definite statement as to his allegation that a material change in circumstances adverse to Delaney had occurred..
¶ 32. On November 28, 2012, Josh filed a motion pursuant tó Rule 34 of the Mississippi Rules of Civil Procedure, seeking permission to enter on Jennifer’s residential premises “for the purposes of inspecting] and photographing the said premises and curtilage thereof, as provided for in said [r]ule.” On this point, I note that the Mississippi Rules of Civil Procedure have limited ■ applicability to proceedings brought under Title 93 of the Mississippi Code of 1972. M.R.C.P. 91. More specifically, it appears to me that an action to modify custody is governed by Rule 81(d), and nothing in Rule 81(d) permits a Rule 34 inspection of the home and surroundings of a minor child in a custody dispute. See M.R.C.P. 81(d).
¶ 33. On February 26, 2013, the chancellor issued an order authorizing Madeline Richmond to perform a Rulé 34 inspection of Jennifer’s “residence and surrounding lands” and “to make a written report back to the [c]ourt.” On May 20, 2013, the chancellor amended its Rule 34-inspection order to substitute Heather M. Aby for Richmond. Aby was also instructed to make a written report to the court, and Josh was ordered to pay the cost for Aby’s report. It is important that Aby was not appointed as a GAL and was not given any directions - by the chancellor as to what the report should address, although the record reflects that the chancellor heavily relied upon the photographs that Aby took in finding that Delaney lived for approximately a year in a “squallerly [sic] and dangerous, shocking environment provided for [her] by [Jennifer].”
¶34. Before discussing the issue and the substantive facts, I need to address Josh’s argument that Jennifer’s sole issue—that the chancellor erred in failing to appoint a GAL since there were allegations of neglect—is procedurally barred. He points to Jennifer’s timely filed motion for reconsideration and then notes that Jennifer filed a supplemental motion for reconsideration sixty-seven days after filing the original motion, raising for the first time the issue of the chancellor’s failure to appoint a GAL. Josh further argues that the issue raised in the supplemental mo *812 tion for reconsideration was untimely and, as such, should not be considered on appeal. However, it is clear that the chancellor had not ruled on the original motion for reconsideration at the time of the filing of the supplemental motion.
¶35. A motion for reconsideration is treated as a motion to amend the judgment and must be filed within ten days from the entry of the judgment sought to be amended. See M.R.C.P. 59(e), Here, there is no debate that Jennifer timely filed a motion for reconsideration. The supplemental motion filed after the expiration of the ten-day period introduced a new argument. However, Josh did not object at the time that it was filed in the chancery court. In addition, the chancellor’s final order overruling and dismissing the motion for reconsideration refers to the supplemental motion. In effect, the supplemental • motion was treated as an amended motion, which consolidated the issues and was ruled upon accordingly. Therefore, I find that Jennifer’s issue here is procedurally alive and is properly before us.
¶ 36. After carrying out what has been called “the inspection,” Aby submitted her findings to the court, but those findings were nothing more than a collection of photographs and a one-page statement. In the statement, Aby wrote:
On May 31, 2013, [I] inspected the property pursuant to the order of the court. Jennifer Carter is residing in a one[-]bedroom mobile home that was once used as an auto[-]repair shop by her family, namely, TnT Auto Repair, The yard surrounding the mobile home was not a safe place for a ehild[,] with car parts, trash, dirty blankets, bottles, ■ old appliances, [and] pipes lying around. The grass also needed cutting. The inside of the trailer was also generally not safe for a minor child[,] with water leaks[,] mold, dirty clothes, dirty and clean dishes everywhere, [and] no air conditioner running. Numerous pictures were taken of the inside and outside of the mobile home[,] which is structurally unsound and in a state of disrepair to the point of Jennifer ... placing tires on the roof to keep the roof from rising during strong weather. Pictures were also taken of what Jennifer Carter considered a “cabin;” however, this is nothing more than a wooden shed with only one entrance. There is no secondary exit in the event of a fire. Pictures have also been taken of this shed.
The pictures taken by the [GAL] speak for themselves. In Riley v. Doerner, 677 So.2d 740 (Miss.1996), the Mississippi Supreme Court found “a chancellor is bound to consider the child’s best interest above all else.”
The residence nor the wooden shed are suitable homes for the minor child- at issue in the above-referenced matter.
¶ 37. Despite Aby’s self-designation as a GAL in her report, she testified that she was not appointed as a GAL in the instant case. She stated that she believed Jennifer’s mobile home was once a trailer for an auto-repair shop. She testified that she saw a tire holding down a tarp on the roof of Jennifer’s one-bedroom mobile home. Aby also stated that there was an old sink, some old appliances, an old fan blade, and an old toddler bed in the yard and that there was a “good bit of garbage ... as well as grownup weeds” surrounding the mobile home. She opined that “[fit’s very unkempt—what [she] would consider unsafe for ... a six-year-old [child].” She questioned whether there was mold in areas where there was visible water damage. Aby further stated that there were exposed light fixtures and wires. Aby commented on the dishes in the sink and *813 clothes in the bathtub, and she believed the mobile home was uninhabitable due to the water leaks, She pointed out that Jennifer explained to her that the roof may come off, and, as a result, Aby was “afraid for a minor child to be there.”
¶38. On cross-examination, it became clear that much of what Aby had put in her so-called report and what she testified to on direct examination was overstated if not outright false. For example, Aby stated that she was not aware that the auto-parts store that Jennifer’s family owned had never been on the property where the mobile home is located. Aby agreed that the trailer did not seem to be an auto-repair shop, but she opined that it could have been an office. She further recalled that Jennifer said the clothes were as strewed as they were because Jennifer had not had a chance to hang them on the line and that Jennifer did not have a washing machine or dryer. Aby confirmed that the dishes were clean and that Jennifer did not have a dishwasher. Aby agreed that Delaney’s room is bigger than what the photo submitted into evidence depicts. She also agreed that there was a lot of food in the refrigerator and in the pantry. Aby further agreed that the lawn seemed to have been cut at some point and that she was not aware that the referenced toddler bed was often used as a flower-garden prop. She also confirmed that the mobile home did not have signs of roaches, bugs, .or rats and that it was just messy.
¶ 39. During further cross-examination, Aby admitted that she had not been able to go inside the cabin that Jennifer was building because she had issues with lifting her leg. Instead, her husband went inside and took the pictures that she relied on to make her evaluation of the cabin. She agreed that the piping, wiring, and insulation depicted in the pictures were preparations for a residence.
¶40. Mississippi Code Annotated section 93-5-23 (Rev.2014) states, in pertinent part:
The court may investigate, heart,] and make a determination in a custody action when a charge of abuse and/or neglect arises in the course of a custody action as provided in [Mississippi Code Annotated] [s]ection 43-21-151 [ (Supp. 2014) ], and in such cases the court.shall appoint a guardian ad litem for the child as provided under [Mississippi Code Annotated] [s]ection 43-21-121 (Rev.2009), who shall be an attorney.
(Emphasis added).
¶ 41. Although not alleged on the face of his motion for modification, during the hearing, Josh emphasized the issue of neglect and its alleged effect on Delaney’s “failure-to-thrive” status. In addition, the Rule 34 search of the premises requested by Josh was indicative of his belief that Delaney was being neglected by Jennifer. It is disingenuous to suggest that since the motion did not allege neglect, there was no need to.appoint a GAL. Furthermore, the chancellor confirmed in his bench opinion that Josh “allege[s] in part that Delaney was not being properly cared for ... and expresses] additional concerns.” As stated, the chancellor took note of the “squal-lerly [sic], and dangerous, shocking environment provided for the child by the mother over an extended period of time of approximately one. year.” Even Josh admits on appeal that issues of neglect arose during the hearing.
¶ 42. “In child-custody ■ cases where there are allegations of abuse or neglect, courts must appoint a guardian.” Borden v. Borden, 167 So.3d 238, 243 (¶ 11) (Miss. 2014). Failure to appoint a GAL, when it is .mandatory, constitutes reversible error. See Heffner v. Rensinh, 938 So.2d 917, 920 (¶ 10) (Miss.Ct.App.2006). Although Heff-ner dealt with an action to terminate pa *814 rental rights, I find that the law also mandates the appointment of a GAL when allegations of neglect arise, and, as such, it is reversible error for a court to fail to appoint one in the face of allegations of neglect. Here, without the benefit of a GAL’s investigation, the chancellor was left with insufficient information about Delaney’s then current situation and could not make an informed ruling. It cannot be legitimately argued that Aby served that function. In light of the facts that were revealed during the cross-examination of her, it is clear to me that, at best, she was incompetent or, at worst, an advocate for Josh, as she made several statements that she possessed no expertise to make. For example, she stated in her report that the mobile home was structurally unsound. I do not believe the record shows that she is a structural engineer.
¶ 43. Section 43-21-121(3) provides:
In addition to all other duties required by law, a [GAL] shall have the duty to protect the interest of a child for whom he has been appointed [GAL], The [GAL] shall investigate, make recommendations to the court[,] or-enter reports as necessary to hold paramount the child’s best interest. The [GAL] is not an adversary party[,'] and the court shall insure that [GALs] perform their duties properly and in the best interest of their wards. The [GAL] shall be a competent person who has no adverse interest to the minor. The court shall insure that the [GAL] is adequately instructed on the proper performance of his duties.
¶ 44. Here, as Jennifer points out, the chancellor did not have a full purview of her relationship with Delaney based only on the Rule 34 report. Further, according to Jennifer’s testimony, she had moved from the mobile home at the time of the hearing. The Mississippi Supreme Court made it clear in In re R.D., 658 So.2d 1378 (Miss.1995), that “the [GAL] is the one primarily charged with and looked to for protection of the children’s interest when judicial proceedings arise.” Id. at 1382 (citation omitted). Certainly a GAL would have thoroughly investigated factors that are fundamental in determining the best interest of a child in a modification-of-custody proceeding where issues of neglect arise: a new home, the relationship between Delaney and each parent, schools, health, age, etc. Instead, the chancellor received a limited statement regarding the conditions of the premises of Jennifer’s former residence, which was a major basis for. the modification of custody. I should note that based on the record and the state of the pleadings at the time the Rule 34 appointment of Aby was made, it is difficult to argue that the purpose of the appointment was for a reason other than to assist Josh in gathering some evidence to support his otherwise naked allegation that a material change in circumstances had occurred. And to base a change of custody on such a one-sided report that does not even attempt to give balance, is to ignore the -important role that a GAL should play in assisting a chancellor in fashioning a solution that is in the child’s best interest.
¶ 45. In his bench opinion, the chancellor stated:
In this case, the [c]ourt finds that [Jennifer] has moved a number of times, at least three, depending on how you count the moves, but three or four moves. And there have been numerous short-lived jobs. And over the course of that time, there has been a lack of stability proven in that home. There have been incidents, altercations; in fact, there has even been gunfire down on the property or near [Jennifer’s] property resulting from either [Josh] or his private investí- *815 gator wanting to take some pictures. I mean, it’s not a stable situation at times. And the squallerly [sic] and dangerous, shocking environment provide[d] for [Delaney] by [Jennifer] over an extended period of time of approximately one year, during which time this child had a lot of respiratory infections, and where the child resided until close proximity in time to the first day of our trial in this case, all of these things in their totality, as well as Delaney’s failure to progress while in the custody of her mother, all of these things constitute a material change of circumstances adverse to the child. Even just the living environment over that period of a year; and I reiterate, it’s shocking, outrageous that any child should have to live in conditions such as that. It is a per se adverse influence to this little girl’s best interest to live in that kind of environment.
¶ 46. With all due respect to the chancellor and the majority, there is not substantial evidence in the record to support the chancellor’s inferential finding.that (1) Delaney’s failure to progress while in the custody of her mother, (2) Delaney’s respiratory infections, and (3) the environment generally where Delaney lived constituted a material change of circumstances. First, it should be noted that the medical evidence is that Delaney was born prematurely at twenty-eight weeks and weighed just two pounds and ten ounces at birth. Admittedly her growth had been slow, but that was the case prior to Jennifer and Josh’s divorce, as she was first seen by Dr. George Moll, an endocrinologist at the University of Mississippi Medical Center (UMMC), on July 10, 2010, for slow-growth problems. ' Remember, the divorce did not take place until June 8, 2011. She was seen again on April 12, 2012, by Dr. Naznin Dixit, a pediatric endocrinologist at the UMMC. Dr. Dixit made it clear that she was just doing a normal follow-up, as is done with children who are born prematurely. Specifically, Dr. Dixit described the purpose of her consultation with Delaney “as a continuing management of her growth problems.” She found no organic or nutritional causes for Delaney’s slow-growth issue, explaining that it could be familial. Therefore, there is no medical evidence that the home environment described in the Rule 34 report had any connection with Delaney’s failure-to-thrive status or any respiratory infections that she has'had.
¶ 47. Second, I point out that the mobile home that is featured so prominently in the Rule 34 report was just a temporary living space while Jennifer was having the cabin built. While Aby described the cabin as a shed, she never went inside of it. Jennifer explained that the cabin is built on the style of a Jim Walters home, is clean, is reasonably spacious, and contains all of-the normal home furnishings. She explainéd that the cabin had been inspected by the 'appropriate government officials and that she had a permit to occupy it, although she still needed to do some painting and add some insulation beneath the floor. As stated, she and Delaney were residing in the cabin when the trial took place.
¶ 48. While Jennifer' did not directly appeal the chancellor’s judgment modifying custody, I would hold that her appeal of the > chancellor’s decision denying her motion to reconsider—wherein the issue of the failure to appoint a GAL was raised—is tantamount to appealing the chancellor’s judgment modifying his prior custody judgment because the chancellor failed to comply with a statutorily mandated prerequisite. Therefore, in my opinion, Jennifer’s failure to directly and literally appeal the modification judgment is no impediment to this Court setting it aside. I *816 would find that the judgment is subject to attack on appeal because the chancellor did not appoint a GAL in the face of allegations of neglect.[5] Consequently, I would reverse the judgment of the chancery court and remand this case to the active docket of the chancery court for a determination—-with input from a properly appointed GAL—of whether a change of custody is warranted.
¶49. For the reasons stated, I would reverse and remand the judgment of the chancery court. Therefore, it is not necessary that I engage in a lengthy discussion of the issue of due process that I mentioned at the beginning of this dissent. First, it is enough to say that Josh’s motion for modification of custody failed to inform Jennifer of the material changes that warranted a change of custody. Second, it appears that at the time Josh filed his motion, there were no such changes and that Josh waited until six days before the hearing to begin a quest to drum up some evidence to support the allegation that he had made approximately five months earlier. Of course, by this time, Jennifer and Delaney had resided in their new residence in Lumberton for approximately five months, enough time for Josh to allege that Delaney was living in very poor conditions. Third, the chancery court, for whatever reasons, refused to order Josh to give Jennifer a more definite statement regarding the allegations that he had made. Given that notice pleading is sufficient to begin an adversary process, it seems to me that rudimentary fairness would dictate that a party who has filed only a notice pleading would—upon proper application to the court by the .respondent—be required to supply the alleged facts supporting the allegations in his pleading. Fourth and final, it seems to me that Jennifer was ambushed and punished for moving away from Brandon, Mississippi.
¶ 50. As an additional observation—• though not relevant to the disposition of the issue before us—I note that Jennifer was not awarded use and possession of the marital home when she and Josh were divorced, yet the chancery court awarded her custody of Delaney. Although the record before us does not reveal Jennifer’s pre-divorce financial condition, it appears that she may have been without the financial means at the time of the divorce to provide a home for Delaney that was equivalent to the marital domicile that Delaney was apparently accustomed to. On this point, I note that in his opinion modifying custody, the chancellor stated:
Now, since the [fjinal [jjudgment of [d]i-vorce, Jennifer has moved to Lumberton in Lamar County, some two hours’ drive away. And presently her vocation is driving a school bus for the local school district, and she brings home some $840 a month. She is also in school at a community college, taking some online courses. Her only income is that $840, plus the child support that she receives from [Josh] each month, and some small amount of public assistance, some $19 in food stamps that she receivefs]. She has a hard time financially and still owes " some debts, or did at the time of trial.... She has had a difficult financial go of it since the [f]inal [jjudgment of [djivorce.
At the present time, she lives in what has been described as a cabin on family *817 property near her mother and stepfather in Lamar County.
Josh, on the other hand, ■ continues to reside in the city of Brandon at the former marital home, and I looked back at the [fjinal judgment, that’s Lot 12, Pecan Ridge West, ‘Part 1, here in the city of Brandon.
¶ 51. It may very well have been in Delaney’s best interest for her custody to have been transferred to her father, but I cannot find that Jennifer was accorded the appropriate due process or that the chancellor followed well-established law regarding the prerequisites that must be met before a transfer may be made. Therefore, I respectfully dissent.

. Although not raised here or in the court below, I point out that there appears to be a serious question as to whether the chancellor even had jurisdiction to hear the motion for modification because the record shows that the hearing was not held on the date specified in the Rule 81 summons but does not show that an order was entered on that date continuing the matter until the day it was finally heard. See M.R.C.P. 81(d)(5).