# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00591-COA

**JASON WAYNE WARREN**                                    **APPELLANT**

**v.**

**GINGER KAYE RHEA**                                          **APPELLEE**

DATE OF JUDGMENT:              12/09/2019
TRIAL JUDGE:                  HON. MITCHELL M. LUNDY JR.
COURT FROM WHICH APPEALED:    DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       BYRON RUSSELL MOBLEY
ATTORNEY FOR APPELLEE:        JERRY WESLEY HISAW
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED IN PART; REVERSED AND
                              REMANDED IN PART - 05/11/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., McDONALD, McCARTY AND EMFINGER, JJ.

### McCARTY, J., FOR THE COURT:

¶1.     Jason Warren appeals the chancery court's grant of visitation and rehabilitative alimony to his ex-wife Ginger Rhea. He argues that the chancery court's failure to include a summary of the guardian ad litem's report and the reasons it deviated from the recommendation in the report requires reversal. He also challenges the alimony award.

¶2.     Finding error in the failure to address the guardian ad litem's report and recommendation, we reverse and remand for the chancery court to explain its reasoning. As to the grant of alimony, we affirm.

## FACTS

¶3.     After nearly fifteen years of marriage, Jason Warren filed for divorce from his wife

Ginger Rhea on the basis of habitual cruel and inhuman treatment and adultery. Ginger countersued alleging the same. Both parties requested full custody of their only child together, Tim.[1]

*A. Child Custody*

¶4. During the proceedings, Jason raised allegations of abuse by Ginger against Tim. Finding a sufficient factual basis to support the allegations, the chancery court appointed a guardian ad litem (GAL) to investigate. In the interim, Jason was granted temporary custody of Tim, and Ginger was awarded visitation on the condition that she participate in reunification counseling. The court later entered a subsequent order that limited Ginger's visitation to one supervised visit a month. Ginger failed to attend any of the visits, alleging that she was unable to afford the associated costs.

¶5. The chancery court also ordered that Jason, Ginger, and Tim attend counseling. Specifically, Tim was to continue weekly counseling sessions, Jason and Ginger were to take part in parenting classes, and all parties were to participate in reunification counseling. Initially, Tim saw a counselor at a counseling center. However, the counselor released him as a patient due to Ginger's treatment toward their staff.[2] The counselor testified that Ginger

---

[1] We use a pseudonym to protect the privacy of the minor child.

[2] This was not the only time Ginger has caused her son to be denied services and forced to seek help elsewhere. Tim was also forced to find a new tutor because of his mother's behavior. The GAL testified that Ginger had called and made threats toward his tutor, and as a result, the tutor stopped seeing Tim. According to the GAL, when Tim began sessions with a new tutor, he kept it a secret from Ginger because he did not want her to "harass, abuse or treat the tutor with such disrespect that she would remove herself from tutoring."

2

made her feel uncomfortable with an email that she should "hug [her] child tight," which she saw as a threat. Ginger also repeatedly threatened to report the counselor and staff of the counseling center to various boards because she was unsatisfied with their services.

¶6. At trial, Tim explained how his mother treated him. The teen testified he is afraid of Ginger. He also stated that she has hit him "many times" and called the police on him "multiple times." These abuse claims were also included in the GAL's report. At trial, the GAL testified that she was able to substantiate claims that Ginger had physically abused Tim and injured his head. She found that the injuries and swelling to Tim's head were documented in the initial reports of the assault and supporting medical documents.

¶7. The GAL reported that Tim "has been abused at the hands of his mother both physically and emotionally." "[S]pecifically in that she blames the child for the divorce and all of her past marital issues." In Ginger's first meeting with the GAL she said that "99% of her marital problems are because of [Tim]." "At no point did Ginger say anything positive about the child" during the interview.

¶8. The GAL found that it was "clear" Tim is "truly afraid of his mother" and it would be "detrimental to [his] best interest to have visitation with his mother[.]" She recommended that visitation only be allowed after "counseling has been participated in and that [a] counselor determines that it is in [Tim]'s best interest and safety to spend time with his mother." She also recommended that "the mother should have a psychological evaluation to determine if she poses a threat to [Tim] or others."

    B.    *Rehabilitative Alimony*

¶9.     Ginger and Jason were married for fifteen years before their separation. During the beginning of the marriage Ginger stayed home to care for Tim while Jason worked as a carpenter to financially provide for the family. As Tim got older, Ginger began to work cleaning houses.

¶10.     According to Jason's Uniform Chancery Court Rule 8.05 financial form and in-court testimony, he earned a gross monthly income of $4,795. In contrast to Jason, Ginger provided the court with various incomes. Her 8.05 financial form indicated that she had a gross monthly income of $2,115. Ginger's application in other court papers stated that she worked part-time at a rate of six dollars an hour for a monthly income of $1,900. At trial, she testified that she earned $300 a week, equating to $1,200 a month.

### C.     Final Judgment and Opinion

¶11.     The court granted Jason the divorce after finding that he had proven the ground of habitual cruel and inhuman treatment with testimony about physical and domestic abuse. "Corroboration was had from the testimony of their son, [Tim], as well as admissions by the Defendant, Ginger[.]" Jason was awarded primary physical and legal custody of Tim "subject to reasonable visitation rights to" Ginger.

¶12.     In the chancery court's judgment, Jason was given the option to buy Ginger's share of equity in the marital home for $60,000. If he did so, Ginger would be awarded the contents of the home less the personal property already awarded to Jason. Alternatively, if the house was "listed and sold within six months, then Ginger [would] receive the contents as she requested as her alimony and additional equitable division."

¶13. The chancery court awarded Ginger rehabilitative alimony "[b]ased on the length of the marriage, as well as the differences in income, as well as income producing employment . . ." and "in view of the fact that [Ginger] is not paying any child support." Jason was ordered to pay Ginger $750 a month in rehabilitative alimony for a period of forty-eight months.

¶14. Aggrieved with the chancery court's decision, Jason appeals.

## ANALYSIS

### I. Omission of the GAL's report and recommendation constitutes reversible error.

¶15. Jason argues that the chancery court committed error on two grounds. First, he alleges that the court erred by failing to address the mandatorily appointed GAL's report in its final opinion. Second, he contends the court erred by failing to specify the reasons it deviated from the GAL's recommendations.

¶16. Chancery courts are required by law to appoint a GAL when allegations of child abuse or neglect are raised during custody proceedings. Miss. Code Ann. § 93-5-23 (Rev. 2018). "[T]here is certainly no requirement that a chancellor defer to a [GAL]'s findings." *Barber v. Barber*, 288 So. 3d 325, 333 (¶33) (Miss. 2020). "Such a rule would intrude on the authority of the chancellor to make findings of fact and to apply the law to those facts." *Barbaro v. Smith*, 282 So. 3d 578, 600 (¶100) (Miss. Ct. App. 2019).

¶17. However, "when the appointment is mandatory, a chancellor must include a summary of the [GAL]'s recommendations in his or her findings of fact and conclusions of law." *Barber*, 288 So. 3d at 333 (¶32) (internal quotation marks omitted). "[A] chancellor's failure

5

to consider a mandatorily appointed [GAL]'s findings is an error of the utmost seriousness." *Id*. at 332 (¶29). Additionally, "when a chancellor's ruling is contrary to the recommendation of a statutorily required [GAL], the reasons for not adopting the [GAL]'s recommendation *shall* be stated by the court in the findings of fact and conclusions of law." *Barbaro,* 282 So. 3d at 600 (¶100) (emphasis added).

¶18. In *Borden v. Borden*, 167 So. 3d 238, 243 (¶¶11-12) (Miss. 2014), a GAL was appointed pursuant to Mississippi Code Annotated section 93-5-23 after a mother raised concerns that her children may have been sexually abused. The GAL reported that her investigation uncovered no evidence of abuse and recommended that the mother be awarded custody. *Id*. The chancery court rejected the recommendation and awarded custody of the children to their father. *Id*. at 240 (¶1). The Supreme Court found that, even though the chancery court acknowledged the GAL's recommendation, its "failure to provide a summary of the [GAL's] report and a summary of the reasons [it] rejected that recommendation was error." *Id*. at 244 (¶14). The Court reversed for the chancery court to address the GAL's report and recommendation in its findings of fact and conclusions of law. *Id*. at 243 (¶13).

¶19. In this case, the chancery court found a sufficient factual basis to support the allegations of abuse, so the appointment of a GAL was mandatory. In her report, the GAL found that it would be harmful for Tim to have visitation with Ginger without counseling. The GAL explicitly included in her report that "it is detrimental to [Tim]'s best interest to have visitation with his mother[.]" She recommended visitation *only* if a counselor could determine that it was in the child's best interest and safety to spend time with his mother.

6

¶20. In a complete rejection of the GAL's recommendation, the chancery court awarded Ginger "reasonable visitation" without any mention of the suggested requirement of counseling. The court's opinion did not include any explanation as to why it deviated from the GAL's recommendation. Further, the chancery court failed to include a summary of the GAL's findings and report. The only mention of the GAL in the final opinion was during the court's analysis of the "parenting skills" factor of *Albright*.

¶21. In accord with precedent, we find that the chancery court's failure to address the GAL's report and recommendation in its final opinion constitutes reversible error. Therefore, we reverse and remand on this issue for the chancery court to assess the GAL's report and recommendation in its findings of fact and conclusions of law.[3]

## II. The rehabilitative alimony award was not manifest error.

¶22. Jason next alleges that the chancery court abused its discretion when it granted Ginger rehabilitative alimony. He claims that "[i]t is unclear how" the amount "was arrived at" considering the "lack of explanation of how the chancellor applied the *Armstrong* factors[.]"

¶23. "On appeal, this Court will not reverse the chancellor's decision regarding an award of alimony unless it finds that the decision was manifestly erroneous or against the

---

[3] Furthermore, we note that the chancery court's lack of specificity in awarding visitation rights has been deemed an abuse of discretion by our Supreme Court. *See Childers v. Childers*, 717 So. 2d 1279, 1282-83 (¶¶15,17) (Miss. 1998) (reversing where "the only mention of visitation [was] that [the parent] has 'reasonable visitation rights'"). Here, the record is devoid of any specific visitation schedule except that Ginger was to receive "reasonable visitation rights." As we are reversing on other grounds, upon remand the chancellor should revisit this ruling to comply with *Childers*. *See also Lauro v. Lauro*, 924 So. 2d 584, 591 (¶27) (Miss. Ct. App. 2006) (reversing for lack of specificity in visitation award).

overwhelming weight of the evidence." *Turnley v. Turnley*, 726 So. 2d 1258, 1265 (¶23) (Miss. Ct. App. 1998) (internal quotation marks omitted).

¶24. The Supreme Court has established a number of factors to guide courts in awarding alimony. *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993); *Turnley*, 726 So. 2d at 1266 (¶28) (citing *Armstrong* as basis for rehabilitative alimony). However, "the chancellor is not required to analyze each *Armstrong* factor individually in his opinion, but is required to view the overall combination of the factors as a whole, opting to address individual factors at his discretion." *Blalack v. Blalack*, 938 So. 2d 909, 912 (¶7) (Miss. Ct. App. 2006). "When the chancellor fails to address all [*Armstrong*] factors on-the-record, we are not required to remand the case, and should not, so long as all facts are available to us so as to allow an equitable determination to be made." *Roberson v. Roberson*, 949 So. 2d 866, 869 (¶6) (Miss. Ct. App. 2007).

¶25. For example, we have affirmed an alimony award when a chancery court did not explicitly cite and analyze each *Armstrong* factor in the findings of fact. *Stevens v. Stevens*, 924 So. 2d 645, 649 (¶8) (Miss. Ct. App. 2006). There, "[t]he chancellor, in his findings of fact, clearly discussed the facts pertaining to each of the *Armstrong* factors as pertaining to the parties, though he did not explicitly cite them as such as he was doing so; rather, he listed the factors at the conclusion of his discussion." *Id*. Finding this analysis to be sufficient, we affirmed. *Id*.; *see also Dorsey v. Dorsey*, 972 So. 2d 48, 54 (¶17) (Miss. Ct. App. 2008) (finding that a chancellor's failure to make an on-the-record analysis of each *Armstrong* factor did not require reversal where sufficient facts in the record supported the decision).

8

¶26. Although the chancery court in this case did not list its analysis of the *Armstrong* factors point by point, it is apparent that the court considered all applicable factors in the judgment. The court took into account the length of the marriage and the differences in the parties' incomes. The court also factored in the contributions to the accumulation of assets by both parties, such as Ginger's domestic contributions that enabled Jason to work outside the home and make financial contributions.

¶27. After a review of the chancery court's judgment, we cannot say that the court abused its discretion, was manifestly wrong, clearly erred, or applied an erroneous legal standard. The award of rehabilitative alimony is affirmed.

## CONCLUSION

¶28. We reverse and remand so that the chancery court can apply and consider the GAL's report and recommendation and, if justified, set a specific visitation schedule. Finding no manifest error in the award of rehabilitative alimony, we affirm.

¶29. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**