# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00159-COA

**COTY ROACH**                                                                 **APPELLANT**

**v.**

**KIMBERLY PHILLIPS AND DARREN**                               **APPELLEES**
**PHILLIPS**

DATE OF JUDGMENT:            01/24/2022
TRIAL JUDGE:                        HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:   DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      ELIZABETH PAIGE WILLIAMS
ATTORNEY FOR APPELLEES:      RACHAEL EMILY PUTNAM
NATURE OF THE CASE:          CIVIL - ADOPTION
DISPOSITION:                 REVERSED AND REMANDED - 05/16/2023
MOTION FOR REHEARING FILED:

### BEFORE BARNES, C.J., McCARTY AND SMITH, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     Coty Roach—the biological father of Ginny, a minor, and the legal father of Molly,

a minor[1]—appeals the DeSoto County Chancery Court's termination of his parental rights.

Finding that the chancellor failed to include in the final judgment a summary of the court-

appointed guardian ad litem's (GAL) qualifications, findings, and recommendation, as well

as the chancellor's reasoning for not following the GAL's recommendation, we reverse and

remand.

### FACTS AND PROCEDURAL HISTORY

---

[1] Due to the confidential nature of this case, pseudonyms are used to protect the
identities of all minors.

¶2. On January 30, 2018, the Tennessee Department of Children's Services (TDCS) received a report alleging that three minor children—Benjamin (seven years old), Ginny (three years old), and Molly (two years old)—had suffered psychological harm, physical abuse, and lack of supervision by their parents, Caitlind and Coty Roach.[2] Benjamin reported that his mother and his stepfather (Roach) were using drugs and that "he had to bathe his two (2) younger sisters, prepare their meals, and wash everyone's clothes." The children had witnessed Roach "hitting, choking, and slapping their mother on a regular basis," and Benjamin had been injured attempting to intervene on his mother's behalf. Benjamin also said that he was afraid of Roach and only felt safe at school. The day the report was made, Roach attempted suicide. He "was diagnosed with schizophrenia and placed on suicide watch at the jail until a bed was available at Western Mental Health Institute." Caitlind tested positive for methamphetamine, amphetamine, and THC.

¶3. On February 8, 2018, the Decatur County, Tennessee Juvenile Court entered a protective custody order, finding that probable cause existed to believe that the three minor children were "dependent and neglected." The juvenile court placed the children in the care of Kimberly and Darren Phillips, their maternal great-aunt and great-uncle. The order stated that the Roaches were liable for child support. On August 20, 2018, the Decatur County Juvenile Court entered an order finding that it was in the best interest of the minor children to remain in the legal custody of the Phillipses.

¶4. In 2019, Roach became sober and completed an inpatient drug rehabilitation program

---

[2] The eldest child, Benjamin, is not Roach's biological or legal child.

in Jackson, Tennessee. While continuing to receive outpatient rehabilitation services, Roach gained stable full-time employment, passed all drug screens, and completed a Tennessee parenting program.

¶5.    On August 10, 2020, the Phillipses filed a "Petition for Registration of Foreign Judgment and Petition for Termination of Parental Rights and for Adoption" against Roach and Caitlind with the DeSoto County, Mississippi Chancery Court. The petition alleged that Roach had failed to support the children. The Tennessee juvenile court transferred "all matters" to the Desoto County Chancery Court on September 28, 2020. Roach filed an answer to the petition on November 24, 2020. The chancery court ordered that paternity DNA testing be completed on Ginny and Molly. The paternity test results revealed that Roach was only Ginny's biological father; so the parties entered into a consent order to correct the named parties on the petition to identify Molly's biological father as "John Doe." However, because Roach is listed on Molly's birth certificate, the court recognized him as her legal father.

¶6.    A trial was held on July 9, 2021. Caitlind testified first and agreed to a voluntary termination of her parental rights.[3] Therapist Hillary Safier testified that the three minor children suffered from post-traumatic stress disorder (PTSD). Benjamin had related to Safier that he witnessed his parents taking drugs, as well as "Roach choking his mother." He would "barricade himself in a room with his sisters for fear that there would be acts of violence against him and his siblings." Benjamin had to cook for his younger siblings and did not

---

[3] Although Benjamin's natural father was not present at the proceeding, the appointed GAL noted that he had consented to a voluntary termination of his parental rights.

"hav[e] clean clothes to put on the morning before he went to school." Safier said that Benjamin had nightmares about being kidnapped and occasionally slept in the Phillipses' bedroom "for reassurance." Safier noted that when the court-appointed GAL[4] suggested that Benjamin meet with Roach, "[Benjamin] reacted extraordinarily strongly in a negative way" and "was quite upset at the suggestion."

¶7.   Regarding Ginny and Molly, Safier suggested that the girls would benefit from "play therapy" due to their tender age.[5] Kimberly Phillips told Safier that four-year-old Ginny would sometimes regress into "baby mode," and three-year-old Molly was having difficulty with potty-training, which Safier indicated was "not appropriate for a child that age." Safier also noted that Ginny suffered "a setback" when she came in contact with her maternal grandmother[6] at a family birthday party and began "having behaviors that were consistent with her PTSD." Ginny also "reacted significantly" to the GAL's suggestion that they have contact with Roach (e.g., regressing into "baby behavior," having to sleep in the Phillipses' room, and "aggressive behavior towards her siblings"). Safier acknowledged that she thought contact could "be re-established" if it was "on the children's terms." However, Safier stated that the children also needed continual reassurance from the Phillipses due to

---

[4] *See* Miss. Code Ann. § 93-15-107(1)(d) (Rev. 2021) ("A guardian ad litem shall be appointed to protect the best interest of the child, except that the court, in its discretion, may waive this requirement when a parent executes a written voluntary release to terminate parental rights.").

[5] Due to COVID-19 restrictions, in-person "play therapy" for the children was limited or not feasible.

[6] The record indicates that the children's maternal grandmother also had issues with drug use.

the "foundation of security and trust that had been completely eroded for the children from a very young age by their parents."

¶8. Kimberly testified that she and the children had not had contact with Roach since September 2019. Prior to that time, she had been "initiating visitations" with Roach, noting that her "goal in the beginning was reunification." However, when the children's behavioral issues "were progressing," she "decided to stop initiating any kind of visitation and focus on the task I was given, which was the kids." Kimberly said the kids "had made so much progress," but when they met with the GAL, "[t]hose kids traveled so far backwards, I have never since I've had those kids even from day one seen those kids so terrified as they were that day in her office." Kimberly testified that the children are "nowhere ready" to be in therapy with Roach due to the "trauma."

¶9. In his testimony, Roach agreed that it was in the children's best interest to stay in the Phillipses' custody, but he wished to "get back in the picture." Roach admitted that he had no relationship with the children and that he did not try to have any phone contact or visitation with the children between September 2019 and March 2020. He also acknowledged that he had not paid any support during that time, even though he earned approximately $30,000 annually. When asked why he was opposing the adoption, he replied that he "want[ed] a chance to make it right."

¶10. Victoria Ryals, the court-appointed GAL, testified that she had met with the children, and she thought "they were all very afraid of the idea of Coty Roach." The GAL clarified that the girls "didn't want to be taken away from Kim," but none of the children "expressed

5

. . . any fear of any physical violence from [Roach] or . . . that he was going to hurt them." The GAL was "struck" by Roach's acknowledgment of "how much harm he has done and how dedicated he is to trying to make that right." She understood why Kimberly wanted to "move[] forward," but the GAL felt that it was in the girls' best interest "to know no matter how this turns out that their daddy went down fighting." The GAL did not recommend terminating Roach's parental rights as to Ginny. As to Molly, who was not Roach's biological daughter, she stated, "[P]robably; but I don't know." The GAL summarized that she felt there was "still room for their relationship with their father."

¶11. In her bench ruling, the chancellor acknowledged that there were factors to be considered in determining whether to terminate parental rights and concluded, "[I]t would be possible for me to say that the Phillipses have checked all the boxes and they have, you know, presented a case that would mean that I could terminate your parental rights." However, noting the GAL's recommendation not to terminate and Roach's attempts to reach out, the chancellor held in abeyance any ruling on Coty's parental rights until the girls could receive additional "play therapy." The matter was continued until December 17, 2021.[7]

¶12. At the second trial, the chancellor heard testimony from the children's new therapist, Dr. Jolene Bailey. She said that Ginny was "very clingy with Kimberly." Dr. Bailey agreed with Safier's diagnosis of PTSD, noting that the girls were "still exhibiting some regressive behaviors," which were triggered by "[a]nything that reminds them of their father, of their mother," as well as their maternal grandmother. Ginny particularly had dreams that

---

[7] At the close of the trial, the chancellor dismissed the GAL from the case. Ryals did not appear at the second trial in December.

6

"somebody would come in and steal them, kidnap them, take them away." Dr. Bailey also said that the children had reverted to sleeping with Kimberly after they received a gift from their maternal grandmother.

¶13. Dr. Bailey's initial focus was to make the children feel "safe" and "secure"; so she did not feel that the girls' being in the same room with Roach "would be at all helpful for them." She concluded, "That train has come and gone, and it won't come back." When asked if she agreed that the children's relationship with Roach had "been so eroded that any contact would cause trauma and regression," Dr. Bailey replied, "Sadly, I would have to agree with that."

¶14. Based on Dr. Bailey's testimony, "together with the testimony" from the July trial, the chancellor found that "it's in the children's best interest" to terminate Roach's parental rights "and allow the adoption to go forward." On January 19, 2022, the chancellor entered a final order terminating Roach's parental rights. In the order, the chancellor found that (1) Roach "willfully deserted and abandoned the minor children" (Ginny and Molly) by failing to support them "for two years and five months"; (2) reunification between Roach and the girls was "not desirable toward obtaining a satisfactory permanency outcome"; and (3) there was "clear and convincing evidence" that Roach's "abusive and neglectful conduct towards [Ginny and Molly] caused an extreme and deep-seated antipathy by the children towards [him]." Other than noting that the GAL provided sworn testimony, the chancellor made no reference in her order to the GAL's findings.[8]

---

[8] Although the chancellor briefly referenced the GAL's report and recommendation, it is not contained in the record.

¶15. Appealing the ruling, Roach argues that the chancellor "terminated [his] parental rights without appropriately finding on the record that the necessary factors for doing so were met by clear and convincing evidence." Roach also claims that the record does not support the chancellor's finding that he had "abandoned" the children. Lastly, Roach contends that the chancellor's failure in her order to explain her reasoning for not adopting the GAL's recommendation was reversible error.

## STANDARD OF REVIEW

¶16. In reviewing a chancellor's decision, "our scope of review is limited by the substantial evidence/manifest error rule." *Bryant v. Bryant*, 348 So. 3d 309, 313 (¶9) (Miss. Ct. App. 2022). "As long as there is credible evidence to support the chancellor's findings of fact, we must affirm the decision." *Middlebrook v. Fuller*, 349 So. 3d 816, 818 (¶8) (Miss. Ct. App. 2022) (quoting *J.P. v. L.S.*, 290 So. 3d 345, 356 (¶36) (Miss. Ct. App. 2019)). Our role is "to consider whether credible proof exists to support the chancery court's findings of fact by clear and convincing evidence," not to substitute our judgment for the chancellor's. *Id*.

## DISCUSSION

¶17. Because the last issue raised by Roach on appeal—the chancellor's failure to address the GAL's recommendation and findings in her final order—is dispositive to our holding, we will address it at the outset. The Mississippi Supreme Court held in *S.N.C. v. J.R.D. Jr.*, 755 So. 2d 1077, 1082 (¶18) (Miss. 2000), "that a chancellor shall include at least a summary review of the qualifications and recommendations of the guardian ad litem in the court's findings of fact and conclusions of law." Furthermore, "when a chancellor's ruling is

8

contrary to the recommendation of a statutorily required guardian ad litem, the reasons for not adopting the guardian ad litem's recommendation shall be stated by the court in the findings of fact and conclusions of law." *Id.*; *see also Barber v. Barber*, 288 So. 3d 325, 335 (¶¶37-38) (Miss. Ct. App. 2020) (reversing chancellor's ruling and remanding for failing "to address the [GAL's] findings and recommendations); *Borden v. Borden*, 167 So. 3d 238, 243 (¶13) (Miss. 2014) (finding the chancellor's failure to "provide a summary of the [appointed GAL's] report or a summary of his reasons for rejecting the [GAL's] recommendation" was error).

¶18.     As the Phillipses concede in their appellees' brief, the chancellor's failure (1) to reference the GAL's qualifications or her findings/recommendation and (2) to provide her reasoning for not following the GAL's recommendation not to terminate Roach's parental rights was reversible error.  Although the Phillipses request that this Court affirm in part on the other issues raised by Roach, we decline to address the chancellor's findings of facts as to the merits.  To do so would render the chancellor's role on remand a ministerial rather than substantive review.  *See Barber*, 288 So. 3d at 335 (¶¶38-39) (remanding for the chancellor to consider GAL's report and recommendations but "declin[ing] to review the other arguments raised on appeal or to assess the trial testimony and the chancellor's findings," leaving those "pending issues" for the chancellor to "adjudicate").

¶19.     Accordingly, we reverse the judgment and remand for the chancellor to make further findings in accordance with this opinion.

¶20.     **REVERSED AND REMANDED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**